James H. RICKETTS, Sr.,
Plaintiff–Appellant,

v.

MIDWEST NATIONAL BANK, et al.,
Defendants–Appellees.

James H. RICKETTS, Sr.,
Plaintiff–Appellant,

v.

SHARP INVESTMENT COMPANY, et
al., Defendants–Appellees.

Nos. 88–1203, 88–2302.

United States Court of Appeals,
Seventh Circuit.

Submitted Dec. 13, 1988.

Decided May 11, 1989.

David E. Wright and Ronald G. Sentman, Johnson Smith Densborn Wright & Heath, James G. McIntire and Thomas J. Costakis, Krieg DeVault Alexander & Capehart, Indianapolis, Ind., for defendants-appellees.

Before CUDAHY, FLAUM, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

James Ricketts has appealed *pro se* from the dismissals of two complaints he filed in the district court after being denied leave to prosecute them *in forma pauperis.* The district court dismissed the first complaint *sua sponte* six days after it was filed

for failure to state a claim. A different district court judge dismissed the second complaint for want of subject matter jurisdiction in accordance with the substantiality doctrine. The second dismissal occurred after the judge had reviewed responsive pleadings and ordered the plaintiff to show cause why the case was meritorious. We have consolidated Ricketts' appeals because they raise a number of questions concerning the proper disposition of patently frivolous *pro se* filings.

## I. Background

On December 18, 1987, Ricketts applied for leave to proceed *in forma pauperis* to prosecute two complaints against assorted defendants. In the first complaint ("the banking complaint"), Ricketts sought relief for various claims against defendants Midwest National Bank of Indiana ("Midwest"), the Indiana National Bank, the Ameritrust Corporation, the Federal Deposit Insurance Corporation, and the United States Treasury. Ricketts claimed that Midwest did not honor his 1973 request to make a small withdrawal from a savings account he had opened for a holding company of his called the A.L.F.E. Company. He alleged that he was the chairperson and executive director of Alfe Inc., a subsidiary of A.L.F.E., and that he and Charles Corbin Jr. opened a joint corporate checking account for Alfe Inc. at the American Fletcher Bank. Ricketts alleged that Midwest wrongfully paid the $30,267.00 balance of the A.L.F.E. savings account over to the other officers of Alfe, Inc. and then participated in executing "new banking resolutions" which did not name Ricketts as an officer of the corporation. In addition, Ricketts claimed that he was prevented from pursuing his claims because he had been involuntarily detained and drugged over a fifteen year period for suspected mental disorders. Ricketts argued that the foregoing transactions violated the Federal Tort Claims Act (FTCA) and various provisions of the Uniform Commercial Code. As relief, he seeks the return of his alleged assets along with fifteen years of accrued interest and an award of $1,000,000 as "restitution."

In his second complaint ("the insurance complaint"), Ricketts lumped together a number of disparate claims against defendants Sharp Insurance Co. ("Sharp") and four of its agents, the Jefferson Insurance Co., Indiana National Bank, two of his former attorneys, the Social Security Administration, the Federal Deposit Insurance Corporation and the United States Treasury. Ricketts' initial allegation is that Jefferson Insurance, the insurer of certain real estate property he had purchased from Sharp, did not honor his policy claims for damage to the property caused by a wind storm and acts of vandalism. He further alleged that in response to a garnishment order entered against him, the Indiana National Bank paid $602.09 to the "defendants" out of an account which was opened on his behalf. Finally, he contended that Sharp stole or converted personal property of his when it sold the real estate after obtaining a judgment against him. Ricketts argued that these acts violated the Federal Torts Claim Act and the "U.S.Code General Index for Insurance, Contracts, Real Estate Fraud & Fraud, and Torts, and Social Security." His prayer for relief in the amount of $67,-359 is based upon his calculation of the total damages he incurred because of these acts.

Ricketts' two applications to proceed *in forma pauperis* and his accompanying complaints were given miscellaneous docket numbers and assigned to a district judge for review in accordance with the procedures suggested in our decision in *Wartman v. Branch 7, Civil Division, County Court*, 510 F.2d 130, 133 (7th Cir.1975). On January 12, 1988, the district court entered separate orders denying both applications. In reference to the banking complaint, the court held that the action was without reasonable basis in law or fact, and thus was frivolous within the meaning of 28 U.S.C. § 1915(d). The court explicitly questioned the jurisdictional basis for Ricketts' claims under the FTCA since he did not allege any grounds which would give rise to a viable claim against the United States. The court also noted that the allegations in the banking complaint suffered

from an obvious statute of limitations problem and that Ricketts was not the real party in interest capable of bringing the banking claims on behalf of the corporation.

Similarly, the court found that the insurance complaint was frivolous within the meaning of § 1915(d). The court concluded that Ricketts did not allege facts that would give rise to a viable claim under the FTCA. The court also stressed that Ricketts' recourse in response to the garnishment action and the adverse state court judgment was to appeal those matters in state court.

Two days after the court denied these applications, Ricketts proceeded to pay the necessary filing fees and filed identical copies of both complaints with the district court.[1] Summonses were issued, but on January 20, 1988, before the defendants had filed any pleading in response to the banking complaint, Judge Steckler, acting *sua sponte*, concluded that the "action was without a reasonable basis in law or fact" and dismissed the complaint for failure to state a claim. Ricketts responded to the court's dismissal order by filing a timely notice of appeal.

The disposition of the insurance complaint followed a different course. After each of the defendants were served and had filed an answer or responsive pleading, Judge Noland entered an order outlining the deficiencies in the allegations and directed Ricketts to show cause why his complaint should not be dismissed. After Ricketts failed to timely respond to the court's order,[2] Judge Noland dismissed the entire action because it lacked the minimum degree of "plausibility" required to support federal subject matter jurisdiction. *See Dozier v. Loop College, City of Chicago,* 776 F.2d 752, 753 (7th Cir.1985). Ricketts filed a timely notice of appeal from this decision.

On appeal, Ricketts' arguments are not altogether clear since his briefs in both actions are discursive and admittedly difficult to follow.[3] It is clear, however, that he questions the district court's authority to dismiss his banking complaint *sua sponte* since he had paid his filing fees. As to the insurance complaint, Ricketts appears to argue that the court erred in its application of the substantiality doctrine because he provided adequate proof of the

1. In *Smith–Bey v. Hospital Administrator,* 841 F.2d 751 (7th Cir.1988), a decision rendered by this court a number of months after the district court denied Ricketts' applications to proceed *in forma pauperis,* we clarified the steps to be taken when denying such applications:

> [W]hen the complaint submitted along with a petition for leave to proceed *in forma pauperis* fails to present an arguable claim for relief, the district court must deny leave to proceed *in forma pauperis* under § 1915(a). At the same time, the district court should also determine whether the deficiencies in the complaint could be cured by amendment. If the allegations show that an arguable claim is "indisputably absent," then the district court should dismiss the case with prejudice under § 1915(d). In doing so, the district court should clearly state that the dismissal is under § 1915(d) and with prejudice. The district court should also enter judgment on a separate document as required by Rule 58.

*Id.* at 758. This procedure should help alleviate the problem of a plaintiff refiling an identical complaint.

2. Ricketts did file a document which he labeled as a "complaint." In it, he made further allegations against the City of Indianapolis and other defendants for towing away his car in 1984 and later destroying it and its contents after he failed to pay the towing and storage fees. The district court interpreted this filing as an attempt to amend the complaint, and took the new allegations into consideration when it dismissed the action for want of federal jurisdiction.

3. The appeal from the dismissal of the banking complaint was further complicated because none of the named defendants were able to properly appear, file an answer or otherwise respond before the complaint was dismissed *sua sponte.* Accordingly, there is no personal jurisdiction over the named defendants, and as Midwest points out, they are not actual parties to this litigation and have no duty to file an appellate brief. Nonetheless, on May 4, 1988, this court ordered the "defendants-appellees" to show cause why the case should not be decided without the benefit of briefs on their behalf. Thereafter, Midwest and the Indiana National Bank filed briefs which helped clarify the particularly sparse appellate record in that case. As we stress later, developments such as these are likely to arise when a complaint is dismissed *sua sponte* for failure to state a claim at such a nascent stage of the proceeding.

merits of his claims. We begin by addressing the latter argument about the substantiality doctrine since it directly involves the subject matter jurisdiction of the federal courts.

## II.  Analysis

As it relates to the original subject matter jurisdiction of the federal courts, the substantiality doctrine requires that a federal district court entertain a complaint seeking recovery under the Constitution or laws of the United States, unless the alleged federal claim either "clearly appears to be immaterial and solely made for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 681–82, 66 S.Ct. 773, 775–76, 90 L.Ed. 939 (1946). When a district court determines that a complaint is undermined by either of these deficiencies, the complaint must be dismissed for want of federal subject matter jurisdiction. *Id.* As the Supreme Court has emphasized, "the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'" *Hagans v. Lavine,* 415 U.S. 528, 536, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577 (1974) (quoting *Newburyport Water Co. v. Newburyport,* 193 U.S. 561, 579, 24 S.Ct. 553, 557, 48 L.Ed. 795 (1904)). Thus the determination of whether the merits of a complaint are sufficiently substantial is a threshold question which must be addressed by a district court before it can exercise jurisdiction and proceed to the legal determination under Fed. R.Civ.P. 12(b)(6) of whether the complaint states a claim. *Bell v. Hood,* 327 U.S. at 682–83, 66 S.Ct. at 776 ("Whether the complaint states a cause of action upon which relief can be granted is a question of law ... which must be decided after and not before the court has assumed jurisdiction over the controversy.").

The substantiality doctrine has a long and rich history as a statement of principle affecting the original jurisdiction of the federal courts over constitutional or federal statutory claims. *Neitzke v. Williams,* —— U.S. ——, n. 6, 109 S.Ct. 1827, n. 6, 104 L.Ed.2d 338 n. 6 2231, n. 6 (1989); *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 70, 98 S.Ct. 2620, 2628, 57 L.Ed.2d 595 (1978); *Hagans,* 415 U.S. at 538, 94 S.Ct. at 1379; *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666–67, 94 S.Ct. 772, 776–77, 39 L.Ed.2d 73 (1974); *Bell,* 327 U.S. at 681–82, 66 S.Ct. at 775–76; *Ex Parte Poresky,* 290 U.S. 30, 31–32, 54 S.Ct. 3, 4–5, 78 L.Ed. 152 (1933) (denial of leave for petition of mandamus); *Levering & Garrigues Co. v. Morrin,* 289 U.S. 103, 105–06, 53 S.Ct. 549, 550, 77 L.Ed. 1062 (1933); *South Covington & C. St. Ry. v. Newport,* 259 U.S. 97, 99, 42 S.Ct. 418, 419, 66 L.Ed. 842 (1922); *Hull v. Burr,* 234 U.S. 712, 720, 34 S.Ct. 892, 895, 58 L.Ed. 1557 (1914); *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913); *Hannis Distilling Co. v. Mayor of Baltimore,* 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482 (1910). At the same time, the doctrine has evoked sharp criticism directed at its vitality as a jurisdictional first principle. *Yazoo County Industrial Development Corp. v. Suthoff,* 454 U.S. 1157, 1160, 102 S.Ct. 1032, 1034, 71 L.Ed.2d 316 (1982) (Rehnquist, J., dissenting from denial of certiorari); *Rosado v. Wyman,* 397 U.S. 397, 404, 90 S.Ct. 1207, 1213, 25 L.Ed. 2d 442 (1970) ("a maxim more ancient than analytically sound"). In the face of the numerous Supreme Court opinions reaffirming its validity, however, it "remains the federal rule." *Hagans,* 415 U.S. at 538, 94 S.Ct. at 1379. Accordingly, this court and the district courts below are bound by this long line of Supreme Court cases, *see Miller v. United States,* 868 F.2d 236, 241 (7th Cir.1989), as well as our own recent decisions applying the doctrine. *Crowley Cutlery Co. v. United States,* 849 F.2d 273, 277 (7th Cir.1988); *Cronson v. Clark,* 810 F.2d 662, 665 (7th Cir.1987); *Dozier v. Loop College,* 776 F.2d at 753.

The upshot of this doctrine is that it places an obligation on the district court to determine its jurisdiction based on an assessment of the complaint that is confusingly similar to the analysis required by a motion under Fed.R.Civ.P. 12(b)(6). *See*

*Montana–Dakota Utilities Co. v. Northwestern Public Service Co.,* 341 U.S. 246, 249, 71 S.Ct. 692, 694, 95 L.Ed. 912 (1951) (jurisdiction based on subject matter is often confused with whether complaint states a claim); *Fogel v. Chestnutt,* 668 F.2d 100, 105–07 (2d Cir.1981), *cert. denied,* 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). *See also* Matasar, *Rediscovering "One Constitutional Case": Procedural Rules and the Rejection of the Gibbs Test for Supplemental Jurisdiction,* 71 Cal.L.Rev. 1399, 1418–21 (1983). As Justice Rehnquist, now Chief Justice, has observed, when this initial level of jurisdictional review is juxtaposed with the provisions of Rule 12, a three-tiered level of review emerges which, because of its unsettled nature, may impede the proper disposition of federal cases in the face of the increasingly heavy dockets of the courts below. *Yazoo County,* 454 U.S. at 1161, 102 S.Ct. at 1035 (Rehnquist, J. dissenting from denial of certiorari).

Justice Rehnquist concluded that the substantiality doctrine and Rule 12 are wholly at odds because the Federal Rules only contemplate a two-tiered review of the sufficiency of a complaint. He pointed out that Rule 12(b)(1) might arguably represent the first tier of a three-tiered system of review to the extent that it allows a party to challenge the subject matter jurisdiction of the court by motion. He concluded, however, that such an interpretation of Rule 12(b)(1) was only possible because of the cryptic statement in *Bell v. Hood* that frivolous complaints invoke no federal court jurisdiction. *Yazoo,* 454 U.S. at 1161 n. *, 102 S.Ct. at 1034 n. *.

■ We respectfully disagree with this view based on our understanding of the substantiality doctrine as a principle bearing upon a federal court's subject matter jurisdiction—that is, the authority to entertain the complaint and ultimately render a decision in the case at all. *Kohler Die and Specialty Co.,* 228 U.S. at 25, 33 S.Ct. at 411 ("Jurisdiction is the authority to decide a case either way."). Accordingly, we believe that a district court's obligation to review its own jurisdiction is a matter that must be raised *sua sponte,* and it exists independent of the "defenses" a party might either make or waive under the Federal Rules. *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). In any event, our reading of the Federal Rules, specifically Rule 12(h)(3), suggests that the district court's authority to review its own jurisdiction according to this obligation is well within the scope of the Rule. Rule 12(h)(3) provides that a court shall dismiss an action "[w]henever it appears by suggestion of the parties *or otherwise that the court lacks jurisdiction over the subject matter.*" Fed.R.Civ.P. 12(h)(3) (emphasis added). *See also* Fed.R.Civ.P. 12(h) advisory committee note (1966 amendments).

By all accounts, the three-tiered level of review effectively focuses the court's attention on the question of how far a complaint should be allowed to proceed based on its merits. For that reason, the proper application of the doctrine is likely to aid the district courts in their task of managing their crowded dockets. *See generally* Administrative Office of the United States Courts, *Federal Court Management Statistics,* (1988). As this court has recently noted, the substantiality doctrine effectively

> spares the federal courts from having to entertain—merely because the defendant did not have the wit to point out the deficiencies in the plaintiff's case—litigation not reasonably grounded in federal law. A federal court should not be required to decide a dispute over an alleged fraud in the sale of bananas merely because the defendant fails to point out that bananas are not securities within the meaning of the Securities Exchange Act of 1934.

*Crowley Cutlery,* 849 F.2d at 277. The task at hand, then, is to distinguish the first two tiers of review in an effort to mitigate the confusion that may arise because of the similarities in their application.

## A.

■ At the first tier of review, the district court must assess the substantiality of

the constitutional or federal statutory allegations of the complaint to determine whether they are immaterial to the true thrust of the complaint and thus made solely for the purpose of obtaining jurisdiction, or whether they are "wholly insubstantial and frivolous." *Bell*, 327 U.S. at 681–82, 66 S.Ct. at 775–76. If either of these conditions exist, the complaint must be dismissed for want of subject matter jurisdiction.[4]

By its own terms, the standard for dismissal is a rigorous one. *Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir.1987); 13B Wright, Miller & Cooper, *Federal Practice and Procedure*, Jurisdiction 2d § 3564 (2d ed.1984). The Supreme Court has repeatedly employed exacting adjectives to define the degree of insubstantiality required before a case is to be dismissed on these grounds—a claim must be "wholly," "obviously," or "plainly" insubstantial or frivolous; it must be "absolutely devoid

of merit" or "no longer open to discussion." *Hagans*, 415 U.S. at 536–39, 94 S.Ct. at 1377–80 (citing cases).[5] As these adjectives imply, insubstantiality dismissals should be applied only in extraordinary circumstances.[6] "[I]f there is any foundation of plausibility to the federal claim federal jurisdiction exists ... Jurisdiction is not lost because the court ultimately concludes that the federal claim is without merit." 13B Wright, Miller & Cooper, *Federal Practice and Procedure*, Jurisdiction 2d § 3564 (2d ed.1984).

The district court's charge then, is to review the face of the complaint in light of the relevant constitutional or statutory provisions and the pertinent case law interpreting those provisions. *Crowley Cutlery*, 849 F.2d at 278. This review may be conducted *sua sponte*, and may be done at an early stage in the proceedings.[7] *Franklin v. State of Oregon, State Welfare Division*, 662 F.2d 1337, 1342 (9th Cir.1981) (if

---

**4.** Because a dismissal for want of subject matter jurisdiction is not a decision on the merits of the complaint, it "will deprive the judgment of res judicata or collateral estoppel effect so far as any related state-law claims may be concerned." *Crowley Cutlery*, 849 F.2d at 278. Thus the proper application of the doctrine should effectively redirect plaintiffs with state law claims to their rightful forum. Where, on the other hand, a plaintiff responds to a jurisdictional dismissal by filing a substantially similar complaint in federal court, the district court's earlier dismissal is binding. Moreover, the district court is authorized to impose sanctions against a *pro se* plaintiff who successively seeks to press a wholly frivolous claim. *See* Fed.R.Civ.P. 11 advisory committee note (1983 amendments). *See also Hilgeford v. Peoples Bank*, 776 F.2d 176, 179 (7th Cir.1985).

**5.** The *Hagans* Court went on to emphasize that: The limiting words 'wholly' and 'obviously' have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281. A claim is insubstantial only if ' "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question can be the subject of controversy." '

415 U.S. at 537–38, 94 S.Ct. at 1378–79 (quoting *Hannis Distilling Co. v. Baltimore*, 216 U.S. at 288, 30 S.Ct. at 327). For an example of the proper application of this principle, *see Cannon v. Loyola University of Chicago*, 609 F.Supp. 1010, 1014 (N.D.Ill.1985).

**6.** In *Crowley Cutlery*, this court explored the distinctions between a frivolous filing within the meaning of Fed.R.Civ.P. 11 and a "wholly" frivolous claim for the purposes of the substantiality doctrine. 849 F.2d at 278. The distinctions are not so marked, however, between a "wholly" frivolous claim and a complaint that is "frivolous" within the meaning of 28 U.S.C. § 1915(d)—the latter exists when "petitioner can make no rational argument in law or facts to support his claim for relief." *Smith–Bey*, 841 F.2d at 757 (citing *Jones v. Morris*, 777 F.2d 1277, 1279 (7th Cir.1985)). We do note that a dismissal under either the substantiality doctrine or § 1915(d) is inappropriate where the complaint raises an arguable question of law which the court may ultimately resolve against the plaintiff. *Neitzke*, —— U.S. —— at —— ——, 109 S.Ct. 1827 at 1833.

**7.** The district court's precaution in this case of ordering Ricketts to show cause why his insurance complaint was meritorious was a particularly judicious step to take before dismissing the action for want of jurisdiction. The effect of the order was to emphasize to the plaintiff that his complaint suffered from significant deficiencies, and that the action could not proceed absent substantial amendments to the complaint.

the court lacks subject matter jurisdiction, summons need not be issued). It bears emphasizing that a plaintiff need only make a "short and plain statement of the claim showing that [he or she] is entitled to relief." Fed.R.Civ.P. 8(a)(2). While all complaints should be liberally construed in the spirit of Rule 8(f) ("All pleadings shall be so construed as to do substantial justice"), the mandate of *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), is applicable to a district court's substantiality review of a *pro se* plaintiff's complaint. Thus the district court is required to liberally construe the *pro se* plaintiff's pleadings, "however inartfully pleaded." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (reaffirming the mandate of *Haines* ). *See also Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980) (reviewing and applying the "settled law" arising from *Haines* ). The purpose of this more solicitous review is to insure that *pro se* pleadings are given "fair and meaningful" consideration. *Matzker v. Herr,* 748 F.2d 1142, 1146 (7th Cir.1984) (quoting *Caruth v. Pinkney,* 683 F.2d 1044, 1050 (7th Cir.1982)).

If the district court determines that the plaintiff's claims are sufficiently substantial to invoke federal jurisdiction, the complaint, as previously noted, must be initially entertained by the district court. *Bell,* 327 U.S. at 681–82, 66 S.Ct. at 775–76. At this second tier, the complaint may be dismissed for failure to state a claim according to Rule 12(b)(6) only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [8] *Hughes v. Rowe,* 449 U.S. at 9, 101 S.Ct. at 175 (citing *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)).

When the plaintiff's complaint is meritorious enough to proceed to this second tier,

the district court's authority to dismiss the complaint *sua sponte* is, to a certain degree, limited by the requirements of the Federal Rules. For example, this court has consistently interpreted Rule 4(a) to require that summons be issued and served before the complaint may be dismissed. *Nicholes v. Schubert,* 499 F.2d 946, 947 (7th Cir.1974) (per curiam) (*sua sponte* dismissal of complaint prior to the issuance of summons and service of process is improper "in light of the mandate of Rule 4(a) that the clerk 'shall forthwith issue a summons.' "); *Dear v. Rathje,* 485 F.2d 558 (7th Cir.1973) (same); *Vina v. Hub Electric Co.,* 480 F.2d 1139, 1140 (7th Cir.1973) (same). Our more recent case law has further required that a plaintiff be given notice and an opportunity to respond before the complaint may be dismissed at this stage in the proceedings. *Bryan v. Johnson,* 821 F.2d 455, 457–58 (7th Cir.1987). *See also Neitzke,* —— U.S. —— at ——, 109 S.Ct. 1827, 1834 (plaintiff with an arguable claim is ordinarily accorded notice of a motion to dismiss and an opportunity to amend the complaint). In *Bryan,* this court held that where plaintiff was required to pay a partial filing fee rather than being allowed to proceed *in forma pauperis,* it was error to dismiss the action *sua sponte* prior to the issuance of summons and service of process:

> A district court may dismiss an action on its own motion for failure to state a claim, but only after the court takes the proper procedural steps. The court must permit issuance and service of process as required by Fed.R.Civ.P. 4(a) and the court must notify the plaintiff of the proposed action and afford him [or her] an opportunity to submit a written argument in opposition.

*Id.* (quoting *Franklin,* 662 F.2d at 1340–41).

---

8. As Justice Rehnquist stated in *Yazoo:*

  In other words, at the second-tier level, the federal court might find simply on the basis of the allegations of the complaint that no triable constitutional issue was raised, and accordingly, dismiss it on that ground. The third tier of review would be where the federal court finds the allegations of the complaint sufficient to state a constitutional claim, and accordingly requires further pleadings, discovery, and perhaps eventually a trial on the merits to determine whether the plaintiff can prove the allegations of his complaint.
  *Yazoo,* 454 U.S. at 1160, 102 S.Ct. at 1034.

A number of other circuits have also exercised their supervisory authority and established a notice and opportunity to respond requirement before a complaint may be dismissed *sua sponte*. *Tingler v. Marshall*, 716 F.2d 1109, 1112 (6th Cir.1983) (requiring (1) service on defendants, (2) notice of the court's intent to dismiss, (3) the court to give plaintiff and defendant an opportunity to respond, and (4) the court to state reasons for dismissal); *Bayron v. Trudeau*, 702 F.2d 43, 45 (2d Cir.1983) (*sua sponte* dismissal reversed and remanded for service on defendants and response); *Jefferson Fourteenth Assoc. v. Wometco de Puerto Rico, Inc.*, 695 F.2d 524, 526 (11th Cir.1983) (Federal Rules do not authorize *sua sponte* dismissal on the merits, and such action is only proper when plaintiff is given notice and opportunity to respond); *Franklin*, 662 F.2d at 1341 (district court must permit issuance and service of process, notify parties of proposed action and afford opportunity to respond, and state reasons for dismissal). *See also Estelle v. Gamble*, 429 U.S. 97, 112 n. 5, 97 S.Ct. 285, 295 n. 5, 50 L.Ed.2d 251 (1976) (Stevens, J., dissenting) (Court's decision should not be seen as an endorsement of *sua sponte* dismissal prior to issuance of summons and service). Moreover, the Supreme Court has approvingly referred to the Sixth Circuit's decision establishing such a procedure for *sua sponte* dismissals as an exercise of the court's supervisory powers which is "supported by sound considerations of judicial economy." *Thomas v. Arn*, 474 U.S. 140, 146, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985) (referring to *Tingler*, 716 F.2d at 1112).

From these cases, as well others, it is possible to discern at least three overriding policy considerations which inform the notice and response requirement for a proper *sua sponte* dismissal. In discussing the effect of *sua sponte* dismissals in general, for example, this court has noted that they may often conflict with the traditional adversarial precepts of our system of justice, and tend to make the district court seem like "a proponent rather than an independent entity." *Doe v. St. Joseph's Hospital*, 788 F.2d 411, 415 (7th Cir.1986). In a related consideration, it is apparent that *sua sponte* dismissals may "prejudice plaintiffs by depriving them of an opportunity to amend their complaint or to argue against dismissal." *Id.* at 415. For example, a summary dismissal of a complaint before service will deny the plaintiff the right to amend the complaint once as a matter of course under Fed.R.Civ.P. 15(a). *See Neitzke*, —— U.S. —— at ——, 109 S.Ct. 1827 at 1834. Finally, this court, as well as a number of others, has emphasized that summary dismissals often defeat the very purpose they are designed to serve since they often lead to judicial inefficiency. *St. Joseph's Hospital*, 788 F.2d at 415. In the present action, for example, the district court may well have believed that its *sua sponte* dismissal of Ricketts' complaint would save the numerous defendants and the court the time and expense needed to respond. On appeal, however, this court sought to clarify the posture of the "defendants-appellees." Upon receiving this court's order to show cause, the named defendants were faced with the disconcerting choice between refusing to become involved in the action, or preparing and filing briefs defending the district court's summary dismissal of the complaint. The defendants chose the latter course and their briefs aided this court considerably. In other reported cases, however, these difficulties have not been resolved so smoothly:

Untimely dismissal may prove wasteful of the court's limited resources rather than expeditious, for it often leads to a shuttling of the lawsuit between the district and appellate courts. The undesirable consequences of premature dismissal are amply illustrated by the awkward posture this case presents on appeal. [Appellant], having had his action dismissed for failure to state a claim, asks us to rule on the sufficiency of his complaint. The state of New York and the other defendants, however, refuse to defend the propriety of [the judge's] order. They have never been made parties to the action, and decline to waive their right to service. Accordingly, they have not briefed the question of the sufficiency of the [appellant's] complaint. We are

confronted, therefore, with a controversy where the defendants refuse to participate because they are not parties, and to resolve it at this stage and under these circumstances would be unnecessary and wasteful.

*Bayron*, 702 F.2d at 46 (quoting *Lewis v. State of New York*, 547 F.2d 4, 6 (2d Cir. 1976).

■ In conclusion, we believe that a wasteful shuttling of cases involving complaints which are substantial enough to invoke federal jurisdiction, but which may ultimately fail to state a claim, is best avoided by following our decision in *Bryan v. Johnson*, 821 F.2d at 457–58. Issuance and service of summons should be allowed according to the mandate of Rule 4(a); and if the court concludes that the complaint should be dismissed *sua sponte* for failure to state a claim, the parties must be given both notice of the court's intention and an opportunity to respond.

## B.

■ With the foregoing principles under the first two tiers of review in mind, we turn to the propriety of the respective dismissal orders of the district court in these cases. In reference to the dismissal of the insurance complaint, we believe that the district court properly dismissed the complaint for want of subject matter jurisdiction. The linchpin for federal jurisdiction in this complaint was the charge that the insurance claims gave rise to a cause of action under the Federal Tort Claims Act. Yet even when read liberally, Ricketts' allegations did not provide any facts, inferentially or otherwise, that would suggest that he had a colorable claim against the United States or any of its employees. Section 1346 of the FTCA provides that the district courts shall have exclusive jurisdiction over "claims against the United States for mon-

ey damages ... for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment ..." 28 U.S.C. § 1346(b). The thrust of Ricketts' claims are directed against Sharp Insurance rather than a federal employee of any of the agencies named in his complaint heading. For this reason, it would appear that the allegation of a cause of action under the FTCA was made solely for the purpose of obtaining federal jurisdiction over what are clearly state law claims. *Bell*, 327 U.S. at 681–82, 66 S.Ct. at 775–76. Ricketts' other jurisdictional allegations, that the acts violated the "U.S.Code General Index for Insurance, Contracts, Real Estate Fraud & Fraud, and Torts and Social Security," is "wholly insubstantial and frivolous." Such a broad and incomprehensible jurisdictional claim is insufficient, even for a *pro se* plaintiff.

The same analysis is applicable to Ricketts' banking complaint.[9] The district court proceeded to address the merits of the banking complaint *sua sponte* when it held that Ricketts' "action was without a reasonable basis in law or fact." The court's dismissal of the action, presumably under the authority of Rule 12(b)(6), was improper because Ricketts' complaint was not substantial enough to proceed beyond the first tier of jurisdictional review. In short, the district court proceeded to address the merits of Ricketts' claims when it lacked subject matter jurisdiction to do so. The allegations in the banking complaint, like those in the insurance complaint, fail to make a colorable claim against the United States or any of its employees for the purposes of the FTCA.

Accordingly, the district court's order dismissing the banking complaint in the case designated by the docket number 88–

---

**9.** Although a district court's order dismissing a complaint rather than a "suit" or "action" is generally not a final order for the purposes of 28 U.S.C. § 1291, *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 463 (7th Cir. 1988); *Bieneman v. City of Chicago*, 838 F.2d 962, 963 (7th Cir.1988) (per curiam), we believe that the district court's dismissal of the banking

complaint falls within the "special circumstances" exception to this general rule: it is clear that "the action could not be saved by any amendment of the complaint which the plaintiff could reasonably make." *Principal Mutual Life Ins. Co. v. Cincinnati TV 64 Ltd. Partnership*, 845 F.2d 674, 676 (7th Cir.1988). Thus we have appellate jurisdiction over this order.

1203 for failure to state a claim is hereby REVERSED and remanded with directions to dismiss for lack of subject matter jurisdiction. The district court's order dismissing the insurance complaint in the case designated by the docket number 88–2302 for lack of subject matter jurisdiction is hereby AFFIRMED.