908 F.2d 975
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Earnest E. MOSES, Plaintiff-Appellant,
v.
ILLINOIS DEPARTMENT OF CORRECTIONS, et al., Defendants-Appellees.
 No. 88-1864.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 22, 1990.*
Decided July 19, 1990.
 
 Before RICHARD D. CUDAHY, and RICHARD A. POSNER, Circuit Judges, and WILBUR F. PELL, Jr., Senior Circuit Judge.
 
 ORDER
 
 1
 Earnest Moses, a black man, is employed as a Correctional Officer at the Pontiac Correctional Center in Pontiac, Illinois. He believes that he is being harassed by a white-supremacist organization called "Brothers of the Bolt" composed of white correctional officers, and their friends. He also believes that higher prison officials knew of the harassment but took no steps to stop it. He filed an action under 42 U.S.C. Secs. 1985 and 1986 against all of the conspirators and those who could have stopped the conspiracy, and he also included a claim under Title VII, 42 U.S.C. Sec. 2000e.
 
 
 2
 The historical facts as presented in Moses' complaint are these: On January 13, 1986 Moses was the subject of an employee review hearing arising out of a charge that Moses had violated prison policy while on duty as a "writ officer" guarding a prisoner at St. James' Hospital on September 8, 1985. Two nurses, Denise Laughlin and Sherry Blandford (not named as defendants, although their employer was named), filed false reports that Moses had violated hospital policy by refusing to leave the prisoner's hospital room door open, and had acted belligerently when asked to open the door. The nurses then forced Moses' fellow-guard Robert Scurlock (also not named as a defendant) to file a confirming report. These reports were forwarded to Moses' supervisor, Lieutenant George Smith, who in turn forwarded them to Kathryn Coniglio, the employee review hearing officer. She recommended that Moses be suspended for three days, and Warden James Chrans concurred. Moses filed a grievance protesting the suspension, and at the third grievance level the suspension was reversed, and Moses was compensated for all monies lost.
 
 
 3
 A second hearing was held on January 15, 1986. Moses was there charged with falsely telling his supervisor that the prison doctor had ordered him to take the rest of the day off. The maliciously false report was filed by Lieutenant T. Wilkins, and confirmed by medical technician Kim Cox, by Dr. Otten and by Correctional Officer D.L. Burnett. Major Dan Kelly referred the matter to hearing officer Congilio. Coniglio recommended an additional three-day suspension, and Warden Chrans concurred. Moses filed a grievance, and the suspension was reversed at the second level of review.
 
 
 4
 On January 21, 1986, Moses was the subject of another disciplinary hearing. Moses stood accused by Correctional Officer Neil Walker of sleeping on the job at the hospital on October 26, 1985. The false and malicious report was sent on to Kelly, who again referred the matter to Coniglio. Noting that Moses had just received a three-day suspension, Coniglio recommended a five-day suspension. Again Warden Chrans concurred. Moses filed another grievance, this one unsuccessful at all levels. When it was learned that the three-day suspension had been reversed, the second-level hearing officer, Jerry W. Joplin, reduced the five-day suspension to a three-day suspension.
 
 
 5
 Yet another hearing was held on June 4, 1986. Moses was charged by Lieutenant Wilkins with refusing to accept mandatory overtime work, and with disobeying orders. The complaint was sent to Major Thomas Huskisson, the shift supervisor, who forwarded it to Coniglio. This time Moses was suspended for ten days. This suspension was reversed at the second level of review after Moses filed a grievance.
 
 
 6
 Although the complaint does not mention it, Moses filed a charge of racial harassment against the Department of Corrections with the Equal Employment Opportunity Commission. He eventually received a right to sue letter dated July 17, 1987. On August 31, 1987 Moses filed this suit in the district court, naming as defendants the Department of Corrections; Illinois Governor James Thompson; Department of Corrections Director Michael P. Lane[1]; Lieutenant Mike Laughlin, the officer in charge of training correctional personnel; employee review hearing officer Marshall W. Ramsey; second-level grievance hearing officer Patricia Lackman; and all the persons mentioned in the summary of factual allegations given above. All had either made a complaint against Moses or had at one time or another failed to reverse one of his suspensions. Specifically, Moses charged that the Brothers of the Bolt members conspired to violate his right to equal protection under the laws "due to rejection by this plaintiff, to join or support or participate," in the organization; and that the others knew of the conspiracy but refused to act to prevent it. Nowhere in the complaint does Moses mention the fact that he is a black man.
 
 
 7
 The defendants filed motions to dismiss under Fed.R.Civ.P. 12(b)(6). On January 21, 1988, Judge Baker held a pretrial conference by conference call. During that call, Judge Baker asked Moses to explain exactly what the defendants had done to harm him. Moses' response was that because of the multiple disciplinary proceedings he had been removed from "writ duty," which involves guarding prisoners on short trips outside the prison, and had thus lost the per diem payments that come with that duty. His base salary was not affected. No further proceedings were had before the court entered its order on February 22, 1988, granting the defendants' motion to dismiss. The grounds for dismissal were that Moses had no protectible property interest in being on writ duty, and could not show deprivation of a constitutionally protected interest, citing Board of Regents v. Roth, 408 U.S. 564 (1972). There was no mention of Moses' Title VII claim, presumably because Moses' complaint did not contain any allegations directly charging the Department of Corrections with employment discrimination. The only Title VII language in the complaint was a reference to 42 U.S.C. Sec. 2000 along with Secs. 1985 and 1986 in his introductory paragraph.
 
 
 8
 It is apparent that the district court was misled by the inartful drafting of Moses' complaint. A careful reading of the complaint shows that Moses did indeed allege a loss of property--he was deprived of three days' pay because of the unreversed part of his suspension of January 21, 1986. The court may also have been under the impression that Moses never exhausted his administrative remedies prior to filing his Title VII claim because there was no mention of the right-to-sue letter in Moses' papers. But even on the paper record before the court, the stated grounds for the dismissal were erroneous.
 
 
 9
 Dismissal under Fed.R.Civ.P. 12(b)(6) of a pro se action is appropriate only if it is beyond doubt that the plaintiff can prove no set of facts to support his claim. Ricketts v. Midwest National Bank, 874 F.2d 1177, 1183 (7th Cir.1989). A Rule 12(b)(6) dismissal is a judgment on the merits, and it bars any future suit arising from the same subject matter. Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 399, n. 3 (1981). It should therefore be granted only where it is clear that there really is no claim which could be pursued. If Moses had in fact suffered no injury other than his removal from writ duty, no amendment to the complaint could have cured the deficiency and final dismissal of the Sec. 1985 and Sec. 1986 claims would have been appropriate. See Stevens v. Tillman, 855 F.2d 394 (7th Cir.1988), cert. denied 109 S.Ct. 1339 (1989) (complaint under Sec. 1985(3) must allege conspiracy to interfere with some constitutionally protected interest or conspiracy to cause state actors to violate rights secured against government action). Similarly, if Moses really had not received a right to sue letter on his Title VII claim, no amendment could have made Moses' complaint state a claim upon which relief could be granted. Had the district court's understanding of the case been correct, the dismissal of the entire action without leave to amend would have been entirely appropriate.
 
 
 10
 But Moses may well have had a protectible property interest in not being suspended. The facts about Moses' legal entitlement to uninterrupted employment under state law are not in the record, but it is not clear beyond doubt that Moses would be unable to show sufficient entitlement to establish a constitutionally protectible interest. Thus it was not proper to dismiss the case at this early stage on those grounds. Because the district court's grounds for decision were in error, we must turn to the question of whether Moses' action could be saved by amendment of the complaint. Moses could have made matters easier both here and in the district court if he had shown the district court exactly why its decision was erroneous, and by presenting an amended complaint. Moses did file a motion for reconsideration under Fed.R.Civ.P. 59(e) asking permission to file an amended pleading,[2] but the motion failed to mention the fact that Moses had indeed lost three days of work, and no proposed amended complaint was attached. Of course, a litigant is not required to file any motions after an adverse final judgment, but has the right to appeal to this Court. Still, Moses has given this Court much more information than the district court had. As a result we have a more accurate idea than the district court of Moses' ability to file a complaint which will survive a motion for dismissal.
 
 
 11
 An appellate court is, of course, restricted to consideration of the record. Our review of the official district court record shows that the court was mistaken in its chosen rationale for dismissal. Our inquiry then becomes whether it was possible for Moses to state a claim, given the opportunity to amend the complaint. If the district court's pretrial conference had been held live rather than by telephone, it would have been abundantly obvious that Moses, a black man, is a member of a protected class, and that it was highly unlikely that a white supremacist organization wanted him to join its ranks. If the complaint could allege that the defendants rigged the administrative hearings against Moses because of his race, and harm could be shown, Moses could have stated a claim. Compare Hampton v. City of Chicago, 484 F.2d. 602, 609-10 (7th Cir.1973) (Plaintiffs could maintain action against police officers for conspiring to cover up evidence of violation of plaintiffs' constitutional rights). If the pretrial conference had been held live Moses' race would in all probability have become part of the record. When dismissal is based on factual rather than legal grounds it is difficult for a court to determine whether the plaintiff could replead sufficient facts. The district court must go outside the record to make such a determination if the record contains only the contested complaint and a motion to dismiss, and in this case we must do so as well.
 
 
 12
 The appellees do not try to defend the district court's reasoning, but they argue for affirmance on alternative grounds.[3] They point to the fact that the complaint fails to allege that Moses is a member of a protected class as a black man, and to the fact that the complaint does not charge that the defendants acted with a racially discriminatory animus. The complaint charges that the Brothers of the Bolt retaliated against Moses because he refused "to join or support or participate" in their organization. There is no hint that they acted because of Moses' membership in a protected class. Nonetheless, these problems are easily resolved by amendment of the complaint. See Fed.R.Civ.P. 15(a) (amendment of pleadings to be freely allowed when justice requires). Moses has presented this court with a proposed amended complaint which fully meets all the appellees' objections. Justice requires that Moses be given an opportunity to prove his claims.
 
 
 13
 The Sisters of the Third Order of Saint Francis, doing business as Saint James' Hospital, ask that the dismissal as to them be affirmed because, even if all of Moses' allegations are taken as true, Moses suffered no harm from the incident in which their employees played a role. According to Moses' allegations, the hospital was involved only in the incident considered at the disciplinary hearing of January 13, and all punishments imposed at that time were reversed. We cannot affirm on these grounds. Moses' complaint (and proposed amended complaint) alleges that the hospital was part of a conspiracy to interfere with his civil rights. Taking that charge as true, the fact that the hospital's part in the overall plot failed makes little difference; every conspirator is responsible for every foreseeable act in furtherance of the conspiracy, Pinkerton v. United States, 328 U.S. 640 (1946), and if the hospital is part of the conspiracy it is vicariously responsible for the acts which did cause harm.
 
 
 14
 We remand this case for further proceedings, but of course our decision in this appeal intimates no view as to the ultimate merit of Moses' claims. We encourage the district court to request an attorney to represent Moses on remand to prepare an amended complaint and to clarify the issues presented. 28 U.S.C. Sec. 1915(d).
 
 
 15
 REVERSED AND REMANDED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [1]
 On January 16, 1990, Kenneth McGinnis replaced Michael Lane as Director. To the extent that this action is against the Director in his official capacity, McGinnis is substituted for Lane as defendant pursuant to Fed.R.App.P. 43(c)
 
 
 [2]
 Moses has included a fresh motion for leave to file an amended complaint in the materials in his appendix, along with a proposed new pleading. Although these documents are captioned for the district court, it appears that that court has never seen them
 
 
 [3]
 The Department of Corrections apparently failed to read the materials contained in Moses' appendix. Had it done so, it would have seen a copy of Moses' right to sue letter, and it surely would not have argued for affirmance of the Title VII claim for failure to exhaust administrative remedies