NH Hemp Council v. Constantine,  DEA  CV-98-280-JD  10/11/98
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


New Hampshire Hemp
Council, Inc., et al.

        v.                              Civil No. 98-280-JD

Thomas A. Constantine, Admin.,
Drug Enforcement Administration


                        O R D E R


     The plaintiffs, Derek Owen and the New Hampshire Hemp

Council, brought this action against the defendant, Thomas

Constantine, the Administrator of the United States Drug

Enforcement Agency ("DEA"), pursuant to the Administrative

Procedure Act, 5 U.S.C.A. § 702 and § 703, asserting that the

defendant exceeded its statutory authority under the

Comprehensive Drug Abuse Prevention and Control Act and

unlawfully violated their constitutional rights.  Before the

court now is the plaintiffs' objection to the Report and

Recommendation of Magistrate Judge James R. Muirhead which

recommended that the plaintiffs' motion for a temporary

restraining order and preliminary injunction be denied and the

case be dismissed for lack of standing (document no. 15).

<u>Background</u>[1]

Plaintiff Owen is an established New Hampshire agricultural producer who currently grows a wide range of commodities. The New Hampshire Hemp Council is a non-profit corporation. Owen, in cooperation with the New Hampshire Hemp Council, seeks to grow hemp on his farm as an agricultural commodity and to demonstrate hemp's value in contributing to improved soil productivity and sustainable local agriculture.

Owen is also a New Hampshire State Representative. In the 1998 New Hampshire legislative session, Owen co-sponsored a bill entitled "An act permitting the development of an industrial hemp industry in New Hampshire and continually appropriating a special fund." <u>See</u> Compl. at 7. The bill would have established a state system for licensing and inspecting hemp growing operations. Although the bill was recommended for passage in the legislature by the Committee on Environment and Agriculture of the New Hampshire House of Representatives, the full House of Representatives defeated the bill with a 175-164 vote.

On February 3, 1998, during consideration of the bill, DEA Special Agent George Festa testified before the Committee that

_____

[1]The facts related herein represent the findings of the court for the purposes of the temporary restraining order and preliminary injunction.

the DEA's interpretation of federal law did not recognize a distinction between hemp and marihuana and criminalized both of them.  Therefore, the proposed state legislation would conflict with federal legislation, and the DEA would treat industrial hemp cultivation as a federal offense.  These statements were allegedly a cause of the bill's failure in the New Hampshire House of Representatives.

The plaintiffs assert that the DEA has exceeded its statutory authority in declaring hemp manufacture and distribution illegal and in threatening prosecution for engaging in such activities under the Comprehensive Drug Abuse Prevention and Control Act.  See 21 U.S.C.A. § 801 - § 966 (West 1981) ("1970 Act").  They argue that these actions violated their Fifth Amendment rights and that the DEA agent's testimony before the Committee violated their First Amendment rights.  Ultimately the plaintiffs seek, inter alia, a permanent injunction prohibiting the DEA from prosecuting them for hemp cultivation, and a declaration of hemp's legality.

On May 2, 1998, the plaintiffs filed a motion for a temporary restraining order and preliminary injunction, which was opposed by the defendant.  The motion was referred to Magistrate Judge James R. Muirhead pursuant to 28 U.S.C.A. § 636(b)(1)(B).  A hearing before the Magistrate followed and his report and

recommendation was issued on June 9, 1998. The magistrate recommended dismissal of the plaintiffs' action, finding that the plaintiffs lacked standing. The magistrate reasoned that because the plaintiffs could not grow hemp legally in New Hampshire under state law, the defendant's allegedly erroneous interpretation of federal law and unlawful threat of prosecution caused no injury to the plaintiffs.

In the event the plaintiffs were found to have standing, the magistrate also considered the merits of the plaintiffs' motion for a temporary restraining order and preliminary injunction. In evaluating the four factors that a court must weigh in considering a preliminary injunction, that is, the likelihood of success on the merits, the potential for irreparable harm, the balance of equities, and the public interest, the Magistrate found the plaintiffs' motion should not be granted. First, the plaintiffs were unlikely to succeed on the merits of the claim as Congress had spoken clearly on the issue and intended to criminalize hemp. Second, because the plaintiffs do not grow hemp, nor have they ever grown hemp, and because New Hampshire law criminalizes hemp independently of federal law, the status quo was not likely to be changed by the defendant's actions and there was no risk of irreparable harm. Finally, the magistrate determined that while the public interest favored no party

4

clearly, equity favored the defendant since distinguishing between immature hemp and marihuana plants is difficult and the DEA's efforts to enforce the nation's drug laws would be frustrated. The plaintiffs filed their objections to the magistrate's report on June 19, 1998.

## Discussion

After a party makes a timely written objection to a magistrate's report, the district court must review the matter de novo. See Northington v. Marin, 102 F.3d 1564, 1570 (10th Cir. 1996). "The district court must consider the actual testimony or other evidence in the record and not merely review the magistrate's report and recommendation." Id.

As discussed above, Owen, in cooperation with the Hemp Council, intends to cultivate hemp for industrial purposes and thereby demonstrate its usefulness as a valuable rotational crop. The plaintiffs therefore seek an injunction prohibiting the DEA from prosecuting persons manufacturing and distributing hemp, as well as a declaratory judgment, in furtherance of their intention to grow hemp, finding hemp cultivation legal and requiring prosecutors to establish in criminal cases, when appropriate, that the substance at issue is marihuana and not hemp.

In support of their action, the plaintiffs assert that

5

Congress only sought to criminalize, <u>inter alia</u>, the manufacture and possession of psychoactive Cannabis sativa L., which the plaintiffs refer to as marihuana, as opposed to the allegedly non-psychoactive Cannabis sativa L., which they refer to as hemp. The plaintiffs argue that the defendant's interpretation of the statute as proscribing the cultivation and possession of hemp is in error. Consequently, the defendant's actions declaring hemp cultivation illegal and threatening prosecution for such cultivation are allegedly beyond its statutory authorization and unlawful. The defendant responded, in part, that the plaintiffs lack standing to bring this action and challenged the injury that the plaintiffs allegedly incurred at the defendant's hands along with the relief the plaintiffs sought.

A. Standing

Article III of the Constitution limits the jurisdiction of the federal courts to actual "cases" or "controversies." One such "case-or-controversy" doctrine limiting the power of the federal courts is the requirement that a litigant have "standing." <u>See</u> <u>Allen v. Wright</u>, 468 U.S. 737, 750 (1984). The standing requirement "has a core component derived directly from the Constitution. A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and

6

likely to be redressed by the requested relief."  <u>Id.</u> at 751.
"[T]he plaintiff must have suffered an injury-in-fact -an
invasion of a legally protected interest which is (a) concrete
and particularized . . . and (b) actual or imminent, not
conjectural or hypothetical."  <u>Lujan v. Defenders of Wildlife</u>,
504 U.S. 555, 560 (1992) (citations and quotations omitted).  The
plaintiff "must allege specific, concrete facts demonstrating
that the challenged practices harm <u>him</u>, and that he personally
would benefit in a tangible way from the court's intervention."
<u>Warth v. Seldin</u>, 422 U.S. 490, 508 (1975).  "[R]elief from the
injury must be 'likely' to follow from a favorable decision."
<u>Allen</u>, 468 U.S. at 751 (citations omitted).  In determining
redressability, the court must "examine[] the causal connection
between the alleged injury and the judicial relief requested."
<u>Id.</u> at 753 n.19.

I. The Status of Hemp Under New Hampshire Law

The magistrate found that the plaintiffs have no standing to
sue because irrespective of the defendant's interpretation of the
1970 Act, which is what the plaintiffs have put at issue in this
case, the plaintiffs are prohibited from growing hemp under New
Hampshire law.  The court agrees with the magistrate that New
Hampshire forbids the manufacture, possession, control, sale,

7

purchase, or transport of any controlled drug. <u>See</u> N.H. Rev. Stat. Ann. § 318-B:2(I) (1995) ("RSA"). Under New Hampshire law, controlled drugs are defined as "any drug or substance, or immediate precursor, which is scheduled pursuant to RSA 318-B:1-a." <u>See</u> RSA § 318-B:1(VI) (1995). The schedule establishes a list of controlled drugs by reference to federal administrative law, <u>see</u> <u>State v. Cartier</u>, 133 N.H. 217, 222 (1990); <u>see also</u>, 1985 N.H. Laws 293:8, and thereby incorporates 21 C.F.R. § 1308.11(d)(19) (1998), which lists marihuana as a schedule I controlled substance. 21 C.F.R. § 1308.02 (1998) refers to 21 U.S.C.A. § 802 for the definition of marihuana, which states that marihuana is:

> all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

21 U.S.C.A. § 802(16) (West Supp. 1998). Therefore, if the federal definition encompasses hemp, then hemp is illegal under New Hampshire law.

The first step in statutory construction is application of

the plain meaning rule.  See, e.g., Catholic Social Servs. Inc.

v. Meese, 664 F. Supp. 1378, 1382, 1383 (E.D. Cal. 1987).  "If

the statutory language is clear and unambiguous, 'that language

must ordinarily be regarded as conclusive.'"  Id. (quoting North

Dakota v. United States, 460 U.S. 300, 312 (1983) (internal

quotations and citations omitted)).  A court may then look to

legislative history "to determine only whether there is 'clearly

expressed legislative intention' contrary to that language, which

would require [the court] to question the strong presumption that

Congress expresses its intent through the language it chooses."

INS v. Cardozo-Fonseca, 480 U.S. 421, 432 n.12 (1987) (citations

omitted).

Marihuana is defined as "all parts of the plant Cannabis

sativa L. . . ."  21 U.S.C.A. § 802(16).  Therefore, anything

that is part of the plant Cannabis sativa L. and that is not

expressly excluded in the statutory definition is, for purposes

of the 1970 Act, marihuana and a controlled substance.  That both

hemp and marihuana are subsumed within the genus Cannabis sativa

L. is evident from the testimony of the plaintiffs' expert

witness Dr. Paul Mahlberg, a botanist licensed by the DEA to grow

and study the genus Cannabis:

> The Court:    So from a biological point of view
>               are they different plants that are
>               part of the same fam –

9

The Witness:    Biologically?  At the present time
                taxonomically or in terms of classifying
                these plants they are placed together.
                This has been a case that has gone into
                the literature for quite some time.

                Correctly they are placed in the same
                genus called cannabis sativa.  In the
                past there were separations between
                different forms of this plant; that is,
                back in the 1930s and well before that.
                But legally, as you know now, we've only
                been dealing with one so-called species
                of the plant, although there are various
                numerous strains.

The Court:      Okay.  If Congress wanted to, would they
                be able to adopt a scientifically
                recognized distinction between the two
                plants so as to legalize one and keep
                the other illegal?

The Witness:    I can't, I can't hear that very well.

The Court:      Could you repeat the question for him?

[Plaintiffs' Counsel]:    Yes.  If Congress wanted to,
                          could it adopt a
                          scientifically acceptable
                          distinction in the law between
                          the plants?

The Witness:    Yes. Congress could do that, very much
                as they have done in Europe, by
                identifying and distinguishing between
                the forms on the basis of their THC
                content.

. . .

[Defense Counsel]:        Is a hemp plant a cannabis
                          sativa plant?

The Witness:    Yes.

10

. . .

[Plaintiffs' Counsel]:    Dr. Mahlberg, would a distinction between marijuana and hemp in your opinion be a scientific distinction?

The Witness:    Be a what difference?

[Plaintiffs' Counsel]:    Be a scientific distinction.

The Witness:    No, it would not be a scientific distinction in the sense of species designation.  However, there are individuals in Europe more so than over here that recognize differences at the species level between forms.  So that would be a typical- at the present time [sic].  It's simply because we here in this country have numerous litigation cases on cannabis and on whether it is or is not marijuana, whereas in Europe that's not the case.  So the attitude is different over there.

[Plaintiffs' Counsel]:    Dr. Mahlberg, let me try to clarify the question, or perhaps phrase it differently. The complaint refers to marijuana and hemp as being varieties within the same species.  And you indicated that the complaint was accurate.  Are you then saying that the distinction between varieties is not in your mind a taxonomic distinction?

The Witness:    Well, it's based on the chemical composition.  And some view this as taxonomically valid, but this does not mean that it's a different species.  But there are, there are subspecific forms, sometimes they're called strains, as I call them, others may call them some

11

other designation, subspecies, for example, but they would state there the characteristic cannabinoid content. Now, over here in this country, as I mentioned before, we are still and seem to be continuously calling it a single species, cannabis sativa.

Transcript of Hearing for Preliminary Injunction, at 46-50 (May 22, 1998) ("Tr."). The court finds that the testimony of the plaintiffs' expert witness establishes that while marihuana and hemp may be two different subspecies or strains of Cannabis sativa L., they are both of the genus Cannabis sativa L. The court concludes, therefore, that based on the record in this case, they are both "marihuana" as defined in the 1970 Act.[2] It follows from this conclusion that hemp is a controlled substance under New Hampshire law.[3]

In addition, the court finds the language of 21 U.S.C.A.

---

[2]To the extent that the plaintiffs question Congress's wisdom or rationale in selecting what to proscribe, the plaintiffs must present their arguments to that legislative forum.

[3]The plaintiffs argue that the legality of hemp cultivation under New Hampshire law can only be determined upon the occurrence of three events: 1) a discretionary state prosecutorial decision to charge a person growing hemp with cultivating marihuana; 2) a unanimous state jury verdict that the person did intend to manufacture marihuana; and 3) the exhaustion of all appeals and collateral attacks rendering the conviction final. However, inherent in the court's duty to determine its own jurisdiction is its power to interpret laws that are relevant to the question of jurisdiction.

§ 802(16) unambiguous and the intent of Congress clear.[4] Contrary to the plaintiffs' assertion, Congress's use of the word "plant" does not create any ambiguity. As the plaintiffs concede, "plant" may refer to a genus, a species, or any of the varieties of subspecies. See Pls.' Objection to Report and Recommendation of the Magistrate Judge at 2. However, "plant" is followed and qualified by "Cannabis sativa L.," which the plaintiffs concede and testimony establishes is the name of a genus. See id.; see also, Tr. at 46. Within that genus and pursuant to taxonomic hierarchy fall both hemp and marihuana, resolving any potential ambiguity. See Tr. at 46-50.

The plaintiffs alternatively claim ambiguity in the statutory definition because it excepts the mature stalk of the plant from other prohibited parts, and manufacture of the mature stalks is technically unfeasible without manufacturing the entire plant. The court finds the argument to be meritless. New Hampshire law does prohibit the manufacture of controlled substances, as well as the purchase, dispensation, and possession of them.[5] See RSA § 318-B:2 (1997). However, given the

_____

[4]Legislative history does not evince a "clearly expressed legislative intention" contrary to the plain meaning of the statute. See Cardozo-Fonseca, 480 U.S. at 432 n.12.

[5]The plaintiffs make this argument under federal law in arguing their likelihood of success on the merits for the temporary restraining order and preliminary injunction. See

generalized nature of § 318-B:2, and the intention to establish proscribed acts for a broad range of controlled substances, the apparent incongruity relied upon by the plaintiffs is of little moment. The exceptions in the definition are not rendered meaningless as the purchase or possession of the mature stalk of the plant is permissible, and the stalk can be obtained through other means than its manufacture, such as through importation.[6]

## II. Injury and Redress

As discussed above, one essential element of standing is that the plaintiffs allege an actual injury-in-fact - an invasion of a legally protected interest - that is neither hypothetical nor conjectural, but that is tangible and concrete. See, e.g., Lujan, 555 U.S. at 560. The plaintiffs' alleged injury is the infringement of their use and enjoyment of Owen's land by a

---

Plaintiffs' Objection to Report and Recommendation of the Magistrate Judge at 15; 21 U.S.C.A. § 841(a) (proscribing the manufacture of controlled substances). The court, however, addresses the argument under New Hampshire law in determining the plaintiffs' standing. See RSA § 318-B:2. New Hampshire and federal law both proscribe the manufacture of controlled substances and the argument is readily transferable.

[6]The court also finds the plaintiffs' lenity argument to be unpersuasive. The lenity rule may serve only to resolve ambiguity, not to create ambiguity. See, e.g., Albernaz v. United States, 450 U.S. 333, 343 (1981) (rule of lenity inapplicable where statute is unambiguous).

14

supposedly unlawful federal ban on hemp cultivation.  However, as determined above, hemp is a controlled substance under New Hampshire law, and the cultivation of it is consequently proscribed.  Therefore, since the plaintiffs have no legally protected interest in growing hemp because such activity is proscribed by state law, the defendant's allegedly unlawful conduct does not cause them an injury-in-fact.

The court also finds that the plaintiffs lack standing because the court could not effectively redress the alleged injury.  The plaintiffs are still precluded from cultivating hemp by state law, the meaning and validity of which has not been challenged by the plaintiffs.  In this regard, the case at hand is analogous to <u>Harp Advertising v. Village of Chicago Ridge</u>. <u>See</u> 9 F.3d 1290 (7th Cir. 1993).  In <u>Harp</u>, the plaintiff advertising firm brought suit under 42 U.S.C.A. § 1983 asserting, among other things, that certain zoning ordinances which precluded off-premise signs violated its First Amendment rights. <u>See</u> <u>id.</u> at 1291.  Meanwhile, a second ordinance, the validity of which was not at issue in the action, precluded signs that were greater than 200 square feet.  The plaintiff sought to erect a sign that was 1200 square feet.  The Seventh Circuit found that the plaintiff lacked standing to bring the action challenging the on-premise sign ordinance "because [the plaintiff] could not put

up its sign even if it achieved total victory in this litigation." Id. at 1291. Similarly, in this case the plaintiffs could not grow hemp in New Hampshire even if they were successful in this litigation. The plaintiffs therefore lack standing to bring their Fifth Amendment claim.

B. First Amendment Claim

The plaintiffs have also asserted that the defendant violated their First Amendment rights by allegedly mis-stating the law before the Agriculture and Environment Committee. "[F]ederal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'" Hagans v. Lavine, 415 U.S. 528, 536 (1974) (quoting Newburyport Water Co. v. Newburyport, 193 U.S. 561, 579 (1904)). Pursuant to this principle, the substantiality doctrine "places an obligation on the district court to determine its jurisdiction" that must be raised sua sponte if necessary. See Ricketts v. Midwest Nat. Bank, 874 F.2d 1177, 1180, 1181 (7th Cir. 1989). It requires dismissal of an alleged federal claim that "'clearly appears to be immaterial and solely made for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial or frivolous.'" Id. at 1180 (quoting Bell v. Hood, 327 U.S. 678,

16

681-82 (1942). The plaintiffs have identified no legal authority remotely supporting their novel argument, nor is the court aware of any. The court finds that the claim is frivolous and warrants dismissal under the substantiality doctrine.

## Conclusion

For the reasons discussed above, the court denies the plaintiffs' motion for a temporary restraining order and preliminary injunction. The court further concludes that the plaintiffs lack standing to bring their Fifth Amendment claim, and that their First Amendment claim is wholly insubstantial. Case dismissed. The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

September 11, 1998

cc: Gordon R. Blakeney Jr,. Esquire
    Gretchen Leah Witt, Esquire
    Arthur R. Goldberg, Esquire

17