Scott D. NELSON, Plaintiff, Respondent
and Cross-Appellant,

v.

Charles TRUJILLO, Defendant, Appellant
and Cross-Respondent.

No. 17677.

Supreme Court of Utah.

Nov. 19, 1982.

Allen L. Larson, Craig S. Cook, Salt Lake City, for defendant, appellant and cross-respondent.

Bruce R. Baird, Robert A. Echard, Ogden, for plaintiff, respondent and cross-appellant.

OAKS, Justice:

This negligence action arising out of an automobile collision has been tried twice. The first jury found $12,000 damages, but apportioned fault equally between the parties. The court granted plaintiff's motion for a new trial. A second jury found defendant solely negligent, fixing damages at $151,029.63. The court denied defendant's motion for a new trial on condition that plaintiff accept a remittitur in the amount of $15,000, which he did.

On appeal, defendant challenges the grant of plaintiff's motion for a new trial after the first verdict. He urges this Court to revise its standard of review of such action, contending that it is so deferential to trial judges that it infringes on the right to trial by jury. Defendant also challenges the denial of his own motion for a new trial after the second verdict. He relies on admission of improper testimony, misconduct of plaintiff's counsel, erroneous jury instructions, and excessive damages. In a cross-appeal, plaintiff seeks reinstatement of the second jury verdict in its entirety on the basis that the trial court could not impose a remittitur without a finding of excessive damages.

The parties' automobiles collided on West Riverdale Road in Riverdale, Utah. Intending to make a left turn, defendant drove into the center turning lane and signaled left. Although he saw plaintiff's car in the oncoming lane, he believed he could safely execute the left turn. As he was completing his turn, he was struck by plaintiff's car. Plaintiff's injuries included a loss of flexion and extension abilities of his neck and a diminution of the neck's lateral bending and rotation ability.

At the first trial, plaintiff called nine witnesses, including the defendant, a neurologist, two orthopedic surgeons, a physical therapist, a police officer, and an accident reconstruction expert. Defendant called no witnesses but relied entirely upon his own testimony and upon cross-examination of plaintiff's witnesses. The jury assessed plaintiff's damages at $12,000, but because it also found the parties equally negligent, plaintiff recovered nothing. U.C.A., 1953, § 78–27–37. The district court granted plaintiff's motion for a new trial, concluding that the evidence was insufficient to justify a jury verdict that plaintiff was 50% negligent. Defendant now urges us to overturn this order of the district court.

### I. REVIEW OF MOTIONS FOR NEW TRIAL

Under Rule 59(a)(6) of the Utah Rules of Civil Procedure, a trial court may grant a new trial on the ground of "[i]nsufficiency of the evidence to justify the verdict . . . ." The trial judge has broad latitude in granting or denying a motion for a new trial, and will not be overturned on appeal absent an abuse of discretion. But when the issue is alleged insufficiency of evidence, the decisions of this Court have established a different standard for our review of the trial court's decisions on motions for new trial, depending on whether

the court has denied the motion or granted it.

■ Where the trial court has *denied* the motion for new trial, its decision will be sustained on appeal if there was "an evidentiary basis for the jury's decision . . . ." The trial court's denial of a motion for a new trial will be reversed only if "the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust." *McCloud v. Baum,* Utah, 569 P.2d 1125, 1127 (1977); *Pollesche v. Transamerican Insurance Co.,* 27 Utah 2d 430, 497 P.2d 236 (1972).

■ Where the trial court has *granted* the motion for new trial, its decision will be sustained on appeal if the record contains "substantial competent evidence which would support a verdict for the [moving party]." *King v. Union Pacific Railroad Co.,* 117 Utah 40, 53, 212 P.2d 692, 698 (1949); *Brown v. Johnson,* 24 Utah 2d 388, 472 P.2d 942 (1970); *Marshall v. Ogden Union Railway & Depot Co.,* 118 Utah 161, 221 P.2d 868 (1950). This rule affords maximum latitude to the discretion of the trial court, which has heard the testimony and other evidence presented to the jury and is best suited to evaluate the claim that it is insufficient to justify the verdict. But in order to assure that a new trial is not a pointless act, the trial court cannot grant a new trial on the basis of insufficient evidence unless the record contains "substantial competent evidence which would support a verdict for the [moving party]." *King v. Union Pacific Railroad Co., supra.*

■ Focusing on the inviolability of jury verdicts rather than the discretion of the trial court, defendant argues that "under existing Utah law a jury verdict is given considerable weight on a denial [of] a motion for a new trial but is given no credence whatsoever on the granting of a motion for new trial." In order to give added protection to the right to a trial by jury, defendant urges us to follow *Lyndes v. Scofield,* 180 Mont. 177, 589 P.2d 1000 (1979), and similar cases in other states and modify our

existing rule so that the trial court cannot grant a motion for new trial if there was substantial evidence to support the jury verdict. But this is precisely the argument this Court rejected in *King v. Union Pacific Railroad Co., supra,* for reasons we still find persuasive. In his exhaustive opinion for the Court in that case, Justice Wolfe said this argument was "amply answered" by the following comments by the United States Supreme Court in *Capital Traction Co. v. Hof,* 174 U.S. 1, 13–14, 19 S.Ct. 580, 585, 43 L.Ed. 873 (1899):

> "Trial by jury" in the primary and usual sense of the term at the common law and in the American constitutions, is not merely a trial by a jury of 12 men . . . but it is a trial by a jury of 12 men in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and (except on acquittal of a criminal charge) to set aside their verdict, if, in his opinion, it is against the law or the evidence.

117 Utah at 50; 212 P.2d at 697. Later in the *King* opinion, the Court gave this additional explanation:

> All that resulted from the granting of the new trial was that the determination of the issues upon which liability was dependent was taken away from one jury and given to another jury. There was no usurpation by the trial court of the jury's function. As was observed by Lord Mansfield in *Bright v. Eynon,* 1 Burrows 390, the effect of a new trial is "no more than having the cause more deliberately considered by another jury, when there is reasonable doubt, or perhaps a certainty that justice has not been done."

*Id.* at 54; 212 P.2d at 699.

A second trial is not without its costs in terms of scarce litigant and judicial resources and the possible unavailability of witnesses or the erosion of their memories. Consequently, the trial judge's prerogative to grant a new trial on an evidentiary basis under Rule 59(a)(6) should be exercised with forebearance. Subject only to that caution, we reaffirm the present standard

enunciated in *King v. Union Pacific Railroad Co., supra.* For good reason, defendant does not bother to argue that the trial court's order granting plaintiff's motion for a new trial offended that standard.

## II. ISSUES ON LIABILITY

The second jury trial was held approximately five months after the first. According to defendant, the testimony at the two trials was "substantially identical." The neurologist did not testify in the second trial, but an additional police officer, an additional accident reconstruction expert, and an eyewitness were added. The jury returned a verdict for plaintiff, awarding special medical expenses of $986.63, lost wages of $43, and general damages of $150,000, for a total of $151,029.63. Defendant moved for a new trial on various grounds, and the court denied that motion. However, on the ground that plaintiff's attorney had engaged in misconduct at trial, the court conditioned its denial on plaintiff's remitting $15,000 of the damages, which he did. This appeal and cross-appeal followed.

Defendant challenges the admission of certain testimony given by a police officer at the second trial. After reciting his observations and inquiries upon arriving at the scene of the collision, the officer gave this description of the accident:

> [Defendant's vehicle] was westbound on Riverdale Road attempting to make a left turn into Freeway Mazda. [Plaintiff's vehicle] was eastbound on Riverdale Road in the outside lane. [Defendant's vehicle] turned in front of [plaintiff's vehicle] and *failed to yield the right of way in turning.* [Emphasis added.]

Thereafter, the officer was allowed, over defendant's objection, to give his opinion as to which vehicle was the cause of the accident. "My opinion was that Mr. Trujillo's vehicle *failed to yield the right of way in turning.*" (Emphasis added.) After briefly cross-examining the witness, defendant moved for a mistrial based upon the testimony of his opinion. The motion was denied.

Defendant now argues that the officer's statement was objectionable as a legal conclusion, since it characterized defendant as having "failed in a legal duty." Opinion testimony on questions of law (other than foreign law) is inadmissible. *McCormick on Evidence* 28 (E. Cleary 2d ed. 1972); 7 *Wigmore on Evidence* § 1952 (J. Chadbourn rev. 1978); 31 Am.Jur.2d *Expert and Opinion Evidence* § 69 (1967). This rule has been applied to hold inadmissible the testimony of a police officer as to right-of-way. *Akin v. Randolph Motors, Inc.,* 95 Ga.App. 841, 99 S.E.2d 358, 363 (1957). On the other hand, an investigating officer's opinion testimony on right-of-way might be admissible as bearing on an "ultimate issue" of fact under Uniform Rules of Evidence 56(4). *Edwards v. Didericksen,* Utah, 597 P.2d 1328 (1979). We elect not to decide that issue on the record in this case.

Even assuming *arguendo* that it was error to allow the officer to give his opinion on the question of right-of-way, we think the error was not prejudicial. The officer's statement that defendant's vehicle "failed to yield the right of way in turning," had already been received without objection. More importantly, the trial court's instructions to the jury on the subject of right-of-way adequately treated the subject and thus neutralized whatever error may have occurred at trial by giving the jury a framework within which to weigh the testimony of the officer.[1]

---

1. The trial court instructed the jury that "the fact that one [driver] has the right-of-way, if such be the fact, does not excuse him from the exercise of ordinary care to avoid causing an accident." The court's instruction continued:
   Failure to yield the right-of-way to one whom the law has given it, is negligence, unless circumstances resulting from causes beyond the control of the driver are such as to ex-

cuse and justify him in such failure, judging his conduct in the light of what an ordinary person of reasonable prudence would have done under similar circumstances.
A subsequent instruction cautioned the jury that "one is not justified in ignoring obvious danger although it is created by another's misconduct nor is he ever excused from exercising ordinary care."

Defendant's other challenges to the officer's testimony were not submitted to the trial court and therefore are not properly before this Court.

### III. ISSUES ON DAMAGES

Defendant also alleges error in the trial court's refusal to grant a new trial on the basis of the alleged misconduct of plaintiff's counsel. The first instance consisted of counsel's leaving insufficient time for cross-examination of a witness. Knowing that the jury had been promised the trial could adjourn at 5:00 p.m., plaintiff's counsel concluded at 4:45 p.m. his direct examination of a physician who was scheduled to perform surgery the next morning in another state. In its findings of fact, the trial court stated that "the maximum effect of this limitation on the cross-examination of [the physician] had slight, if any, effect."

The second instance of alleged misconduct consisted of counsel's writing on a previously received exhibit in ballpoint pen the amount of damages plaintiff was claiming. The jury took the exhibit into the jury room. The trial court found that this action was "improper and without justification," but that "the possible damage and effect of this conduct ... would be slight, if any."

The trial court stated: "The court has considered these two errors made during trial, and considers that they could not have had a greater effect than 10 percent on general damages." Based on this finding, the trial court denied defendant's motion for a new trial but gave a remittitur that reduced plaintiff's general damage award by ten percent ($15,000).

On appeal, both plaintiff and defendant insist that the granting of a remittitur on this basis was impermissible. We agree. It is common practice for a court to condition a denial of a new trial on plaintiff's acceptance of a remittitur where the damage award is excessive. *See, e.g., Utah State Road Commission v. Johnson,* Utah, 550

P.2d 216 (1976); *State Road Commission v. Kendell,* 20 Utah 2d 356, 438 P.2d 178 (1968); *Houston Sports Association, Inc. v. Russell,* Tex.Civ.App., 450 S.W.2d 741 (1970) (remittitur available where excessive amount "capable of definite and accurate ascertainment").[2] However, the trial court specifically found that the damage award in this case was *not* excessive. (In fact, that is one finding defendant challenges on appeal.) The court found as follows:

While the verdict in the amount returned was a definite surprise to the Court, the Court does not deem that, per se, sufficient reason for reducing the verdict.... The test is whether or not a reasonable juror or jury could have concluded as this jury did conclude after hearing and seeing the evidence here present. The Court concludes that the jury could have reached the verdict which it reached.

We are aware of no authority for ordering a remittitur on the basis of attorney misconduct where the damage award is not excessive.

The proper remedy for prejudicial attorney misconduct is to order a new trial. *Ivie v. Richardson,* 9 Utah 2d 5, 12–13, 336 P.2d 781, 786–87 (1959); *Morrison v. Perry,* 104 Utah 151, 164–66, 174, 140 P.2d 772, 778–79, 782 (1943). The standard for making this determination is whether the errors were "real and substantial and such as may reasonably be supposed would affect the result." *Ivie v. Richardson,* 9 Utah 2d at 13, 336 P.2d at 787. A finding that the alleged misconduct had "slight, if any" effect is not responsive to this standard and is not in a form that can be reviewed by this Court. Therefore, we would ordinarily remand a case such as this with instructions for the trial court to rule on whether it can reasonably be supposed the jury would have reached a different verdict without the alleged misconduct. However, this course of action is unnecessary in this case.

Neither the incomplete cross-examination of the physician nor the writing on the

---

**2.** *See generally,* Comment, "Remittitur Practice in the Federal Courts," 76 Colum.L.Rev. 299 (1976). In the federal system, a plaintiff is not

permitted to appeal a remittitur order to which he agreed. *Donovan v. Penn Shipping Co.,* 429 U.S. 648, 97 S.Ct. 835, 51 L.Ed.2d 112 (1977).

exhibit in any way related to the issue of liability. Their effect, if any, must have been limited to the issue of damages. (This conclusion is confirmed by the fact that the trial court felt that a remittitur would compensate for any prejudice that might have occurred.) Therefore, even a holding that the alleged misconduct was prejudicial would require no more than a retrial on the issue of damages.[3] Utah R.Civ.P. 59(a) (new trial can be granted on "part of the issues"); *Page v. Utah Home Fire Insurance Co.,* 15 Utah 2d 257, 391 P.2d 290 (1964); *Connor v. Grosso,* 41 Cal.2d 229, 259 P.2d 435 (1953); *Brncic v. Metz,* 28 Colo. App. 204, 471 P.2d 618 (1970); *Verren v. City of Pittsburg,* 227 Kan. 259, 607 P.2d 36 (1980); *Fields v. Volkswagen of America, Inc.,* Okl., 555 P.2d 48 (1976). But because this case must be retried on the issue of damages for other reasons, as explained below, it would be pointless to make further inquiry into whether counsel's actions were prejudicial on the issue of damages in the second trial.

■ Defendant asserts error in the trial court's instructing the jury that they could give the plaintiff damages for the loss of future earnings.[4] Defendant made a timely objection to this instruction on the basis that plaintiff had provided no evidence that he would sustain loss of future earnings as a result of his injury. The trial court responded to defendant's motion for a new trial on this basis as follows:

Defense attorney is correct in that there was no direct evidence of dollar anticipated loss in the future. However, plaintiff's appearance is now abnormal. There is evidence from his mother, and

from himself, that indicates that it has definitely affected his personality. That such an event would occur without affecting the general lifetime expected earnings of an individual would be unlikely. While it is possible that the plaintiff will find some type of endeavor that he can pursue which will return to him the same general earnings that he would have had had he not suffered the injury, the court believes that the jury could well consider that this is extremely unlikely. Plaintiff is a college student who was injured when he was 19 years of age. He is now majoring in business-type classes. The jury could easily conclude that his potential as an earner has been substantially reduced.

Plaintiff has pointed to no evidence in the record upon which the jury could assess damages for future loss of earnings. A jury instruction on future loss of earnings is improper where there is no evidence upon which a jury could reasonably base such an award. *Check v. Meredith,* 243 Ark. 498, 420 S.W.2d 866 (1967); *J.C. Penney Co. v. Brown,* 155 Colo. 212, 393 P.2d 575 (1964); *Williams v. Nowling,* Fla.App., 297 So.2d 82 (1974). In the case at bar, "the jury had no basis, except pure guesswork, for estimating earnings reasonably certain to be lost in the future." *Check v. Meredith,* 243 Ark. at 500, 420 S.W.2d at 867. The $150,000 general damages in this case, and the trial court's expressed surprise at the size of the verdict (in contrast to the $12,000 awarded at the first trial), suggest that this erroneous instruction affected the size of the verdict to the detriment of the defendant. We must therefore remand this issue for a new trial.

**3.** This is not a case like *Hyland v. St. Mark's Hospital,* 19 Utah 2d 134, 137, 427 P.2d 736, 738 (1967), where the issue of damages is "so intermingled" with the issue of liability that fairness to both parties requires that the new trial be on all issues.

**4.** The court instructed the jury as follows:

In determining such damages, you may award such sum as will fairly and adequately compensate plaintiff for any loss of earnings he suffered because of the injury in question by reason of being unable to work. In deter-

mining the amount of such loss you should consider the evidence of the plaintiff's earning capacity and the extent to which any disability resulting from said injury has prevented him from carrying on his work and has reduced his income. *Plaintiff would also be entitled to an award for the loss of future earnings and the present value of such loss, if any, as you believe from a preponderance of the evidence he is reasonably certain to suffer in the future as the result of the injury in question.* [Emphasis added.]

This disposition makes it unnecessary for us to reach the other questions raised on the appeal and cross-appeal.

The judgment of the trial court is affirmed on the issue of liability, and the case is remanded for a new trial limited to the issue of damages. No costs awarded.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.