EGBERT & JAYNES, a Utah partnership, Farnes Egbert and Warren Jaynes, Plaintiffs and Appellants,

v.

R.C. TOLMAN CONSTRUCTION COM-PANY, INC., a corporation, and Randy C. Tolman, d/b/a R. & B. Tolman Con-struction Company and/or R. & B. Tol-man Drilling & Construction Company, Defendants and Respondents.

No. 18546.

Supreme Court of Utah.

April 6, 1984.

Randon W. Wilson, L.R. Curtis, Jr., Salt Lake City, for plaintiffs and appellants.

Don Strong, Salt Lake City, for defend-ants and respondents.

DURHAM, Justice.

Plaintiffs Farnes Egbert and Warren Jaynes, partners in Egbert & Jaynes, a Utah general partnership, bring this appeal from an adverse judgment in a suit brought against defendants R.C. Tolman Construction Company, Inc., a Utah corpo-ration engaged in the business of drilling wells; R. & B. Tolman Drilling and Con-struction Company, an assumed name un-der which R.C. Tolman, an individual, does business; and Randy Tolman, an employee of the defendant companies. Plaintiffs sought damages for an alleged breach of a drilling and well construction contract be-tween the parties. Defendants counter-claimed for money due under the contract. The trial court, sitting without a jury, found for the defendants on plaintiffs' claim and awarded judgment to defendants on their counterclaim. The trial court de-nied the plaintiff's motion for a new trial. We affirm.

The undisputed facts are as follows. Plaintiffs entered into a written contract with defendant R. & B. Tolman Drilling & Construction Company ("Tolman Drilling")

pursuant to which Tolman Drilling was to drill an exploratory water well. The contract was completed and all amounts due thereunder were paid.

Thereafter plaintiffs entered into a second contract with R.C. Tolman Construction Company ("Tolman Construction") pursuant to which Tolman Construction was to enlarge the exploratory well to a production well and drill a cement injection well. This contract provided, among other things, that "[a]ll work shall be done in a good and workmanlike manner with a view to making the greatest possible water supply permanently available." Tolman Construction commenced work on a production well with a 24-inch casing, furnishing labor, materials and equipment. Some weeks later Tolman Construction abandoned the project at plaintiffs' request. Plaintiffs then contracted with Gerald Adcock to complete the well. Mr. Adcock was unable to complete the well, and plaintiffs abandoned it. Plaintiffs filed suit claiming defendants breached the second contract by not constructing the well in a "good and workmanlike manner with a view to making the greatest possible water supply permanently available."

Plaintiffs contend on appeal that the trial court's findings of fact 12 through 15, as set forth below, are not supported by any substantial evidence and that the lower court therefore erred in denying plaintiffs' motion for a new trial.

■ The applicable rule of appellate review is well established:

In considering the attack on the findings and judgment of the trial court it is our duty to follow these cardinal rules of review: to indulge them a presumption of validity and correctness; to require the appellant to sustain the burden of showing error; to review the record in the light most favorable to them; and not to disturb them if they find substantial support in the evidence.

*Charlton v. Hackett,* 11 Utah 2d 389, 390, 360 P.2d 176 (1961). Where the trial court has denied a motion for a new trial under Utah R.Civ.P. 59(a)(6), as in the present case, the standard of review is the same. The trial court decision will be sustained on appeal if there was an evidentiary basis for the decision. *Nelson v. Trujillo,* Utah, 657 P.2d 730, 732 (1982). In applying the foregoing rule of review, we find substantial support in the record to uphold the judgment of the trial court.

We turn first to findings of fact 12 and 13. Finding 12 states: "There was no proof that the work performed by defendant, R.C. Tolman Construction Company, Inc., was defective or that it did not meet the standards for such work which are generally accepted in the well drilling industry."

Finding 13 states: "There was no proof that any of the defects in the well and the construction thereof which were alleged by plaintiffs were caused by the defendant."

At trial plaintiffs introduced evidence concerning standards in the well drilling industry for plumbness and alignment, which standards they contended were not met.[1] An expert well driller, Kenneth Lee, testified that the standard for plumbness is an allowable variance of three inches every hundred feet. His inspection, with the aid of a videotape, led him to conclude that the well was four to five inches off plumb at the 84-foot level and that an unexplained separation in the casing at the 62-foot level that appeared to have cement in it was an "offset" in the casing.

Adcock, the driller hired to replace Tolman Construction, testified that alignment of a well is within industry standards if a 40-foot length of pipe with a diameter 1½ inches smaller than the hole being tested can pass freely through the casing. Plaintiff Warren Jaynes later testified that he conducted such a test, and the results indicated improper alignment.

1. Plaintiffs define "plumbness" as "a measure of straightness in the sense that it refers to the extent to which the well follows a line running from the surface to the center of the earth," "alignment" as "straight in the sense [of] maintain[ing] a consistent direction."

■ First, we note that plaintiffs rely heavily on their own expert testimony and imply, that, in the absence of expert testimony about differing standards for alignment and plumbness, the effect is to establish plaintiffs' expert's conclusions as absolute and uncontroverted. With regard to such testimony, its purpose is to assist the trier of fact in understanding the evidence or in determining a fact in issue. Utah R.Evid. 702. The trier of fact is not bound to accept the testimony of an expert and is free to judge the expert testimony as to its credibility and its persuasive influence in light of all of the other evidence in the case. *See Holley v. Federal-American Partners*, 29 Utah 2d 212, 215–16, 507 P.2d 381, 383 (1973). Thus plaintiffs' expert testimony must be viewed in the context of all of the evidence offered by both parties, including that of defendants themselves, who were experienced well drillers.

■ Although, as plaintiffs contend, Lee testified that his inspection of the well revealed that the well did not meet industry standards for plumbness, the record reveals confusion and conflict within the same expert testimony. He was uncertain about the nature and timing of the alleged break in the casing at the 62-foot level, which plaintiffs contend was evidence of defendants' shoddy workmanship. He admitted that when the arm holding the camera hit a spot that was welded, the camera moved. Furthermore, the diameter of the casing changed at certain levels and the plaintiffs' witness admitted that some problem may have been encountered when a camera arm set for a 16-inch hole was inside a 24-inch hole. He was unable to explain several questionable occurrences on the videotape relating to lighting, the point where the camera got stuck, and unidentified objects in the hole.

Plaintiff Jaynes did testify that the alignment test he conducted indicated improper alignment. However, Adcock testified that when he came onto the project he checked part of the hole for alignment problems and found none. After working on the project himself, he believed that ground shifting and caving in on the pipe could have caused a break in the casing. He testified that there are no straight holes; they all deviate somewhat. During the drilling, he thought they had reached bedrock on three to five different occasions, indicating, in his opinion, that the site was a fractured area. The area was an extremely difficult one to drill, and no one method would be successful. He suggested that there are a number of different possible causes for breakage in the casing of a well, particularly in "cavitated" areas such as the one in question.

Defendants' witness, J. Farrell Petersen, an experienced well driller, testified that a variety of things can cause a break in the well casing due to factors outside the driller's control; that the standards for deep water wells are drawn up for what would be considered an ideal situation; that fractured conditions of the terrain and ground shifting at the site could account for the break in the casing; and that the method Tolman Construction used to cement the casing in the well was a proper and satisfactory one.

Defendant Randy Tolman, manager of the project, testified that at various times during the well construction, his crew would pump any water out of the hole and view the inside of the hole, using a mirror reflection method. At those times they did not see a break around the 60-foot level. Tolman admitted that in viewing the videotape made by plaintiffs, he saw what appeared to be a break in the casing around the 60-foot level but, in his opinion, the break was the result of ground movement, which could have been caused by the Wasatch Fault, or by Adcock's subsequent drilling with an air hammer, which could have created a cavity. Tolman also testified as to the fractured nature of the site that "there were indications of caving while we were drilling due to the material that we were drilling through." He also testified that his crew installed smaller casings in larger ones to try to prevent a caving zone, as is customary in the drilling industry.

Plaintiffs rely on testimony by Oxley to the effect that welding performed on the well by Tolman was poorly done, thus causing defects in the well. But Oxley also testified in answer to a question as to whether a particular welding would hold: "How much it will hold, what their conditions are, I don't know." Oxley had earlier testified he was a welder, not a driller.

Findings 14 and 15, also disputed by plaintiffs, state as follows:

14) There was no proof that any of the alleged defects in the well and the construction thereof caused any damage to plaintiffs.

15) There was no proof as to the amount of water available had the well been successfully completed nor of the amount that could be pumped from the well in its condition when abandoned.

We find substantial support for the judgment of the trial court with respect to findings 12 and 13, therefore, we need not address findings 14 and 15, which are dependent on finding Tolman Construction's work defective.

The lower court, acting fairly and reasonably, could rely on substantial evidence showing that Tolman Construction did not breach its contract with Egbert and Jaynes. We therefore affirm the trial court's denial of plaintiffs' motion for a new trial. Costs to respondents.

HALL, C.J., and STEWART, OAKS and HOWE, JJ., concur.