Lynn A. JENKINS, Plaintiff
and Appellant,

v.

Elaine B. WEIS, Defendant and Appellee.

No. 920652–CA.

Court of Appeals of Utah.

Jan. 7, 1994.

Rehearing Denied Feb. 14, 1994.

John Michael Coombs, Salt Lake City, for plaintiff and appellant.

Jan Graham and Debra J. Moore, Salt Lake City, for defendant and appellee.

Before BENCH, JACKSON and GARFF,[1] JJ.

## OPINION

JACKSON, Judge:

Appellant Lynn Jenkins brought an action against Elaine Weis for defamation, intentional infliction of emotional distress, and invasion of privacy. Jenkins appeals the jury verdict in favor of Weis. He also challenges several rulings by the trial court. We affirm.

## FACTS

On January 16, 1987, a local television station aired a story concerning Utah's thrift crisis, which involved the insolvency of several savings and loan institutions in Utah along with state-owned corporations that guaranteed their deposits. The broadcast included the following portions of a pre-taped interview with Elaine Weis, Commissioner of Financial Institutions:

> MICHELLE KING: Neither depositors nor state officials are happy about this latest turn of events. It's sure to strain even further the already difficult relations between both sides. As KUTV's Rick Shenkman reports the controversy has now turned openly bitter, pitting the key leader of depositors against Financial Commissioner Elaine Weis.

> RICK SHENKMAN: They were never friendly but now they're virtual enemies. Elaine Weis, Commissioner of Financial Institutions, Lynn Jenkins, one of the key leaders of the thrift depositors.

> LYNN.JENKINS: I don't like the word "liar." I like to just say that she has been less than honest. There has been a complete conspiracy of silence by the Commissioner in the financial institution [sic] since the day she came on board.

> ELAINE WEIS: I would feel sorry for Lynn Jenkins because I think he's a mentally deranged person.

> RICK SHENKMAN: From the beginning of the thrift controversy it was almost certain to turn bitter. The state says depositors should only receive between 27 cents and 68 cents on the dollar, depositors feel the state set up the now-defunct corporation that was supposed to guarantee their money, but no one could have predicted that it would get this bad.

> ELAINE WEIS: In my opinion, he's a paranoid schizophrenic, and I would feel sorry for him, but he's such a vicious, vicious person that I can't and I wish I could.

> LYNN JENKINS: I need Commissioner Elaine Weis under oath because she

---

1. Senior Judge Regnal W. Garff, acting pursuant to appointment under Utah Code Ann. § 78–3–24(10) (1992).

fails to live up to anything that she says verbally. She needs to be more forthright and honest with the people.

ELAINE WEIS: I hope he's not prone to violence because I really am afraid, of some, a, you know, not attack on me but my family.

LYNN JENKINS: I have never had a violent record in my life. She has nothing to fear from me except for the truth.

In April 1987, Jenkins filed a complaint against Weis alleging defamation, intentional infliction of emotional distress, and invasion of privacy based on the above remarks. On May 29, 1990, Weis filed a motion for designation of Jenkins as a public figure. On May 31, 1990, the trial court ruled by minute entry that Jenkins was a public figure. The case was tried before a jury and after Jenkins presented his evidence and rested his case, Weis moved for a directed verdict. The parties argued the motion and the court ruled. As part of its ruling, the court, on its own motion, dismissed Jenkins's claims of invasion of privacy and intentional infliction of emotional distress. Weis presented her evidence, including several witnesses who testified concerning Jenkins's behavior.

The jury returned a verdict of no cause of action on the defamation claim, finding that although Weis had published defamatory statements about Jenkins, the statements were true. After entry of judgment, Jenkins's motions for new trial and judgment notwithstanding the verdict were denied. Jenkins appeals.

## ISSUES

Jenkins claims the trial court improperly: (1) determined that he was a public figure; (2) dismissed two of his causes of action sua sponte; (3) submitted erroneous jury instructions; (4) allowed the state attorney general's office to represent Weis and allowed members of the attorney general's staff to testify at trial; and (5) decided pretrial motions within five days of trial.

## ANALYSIS

### Public Figure Ruling

Jenkins claims the trial court improperly determined he was a public figure. Weis claims that even if the trial court improperly determined Jenkins was a public figure, its ruling was harmless and thus, should not be disturbed. *See* Utah R.Civ.P. 61 (1992); *Huston v. Lewis,* 818 P.2d 531, 533 (Utah 1991); *State v. Verde,* 770 P.2d 116, 120 (Utah 1989); *Steffensen v. Smith's Management Corp.,* 820 P.2d 482, 489 (Utah App.1992), *aff'd,* 862 P.2d 1342 (Utah 1993). We agree.

■ An error is harmful only if there is a "reasonable likelihood that the error affected the outcome of the proceedings." *Steffensen,* 820 P.2d at 489. The jury found that Weis's statements were true and truth is an absolute defense to a defamation claim. *Brehany v. Nordstrom, Inc.,* 812 P.2d 49, 57 (Utah 1991). Thus, regardless of whether Jenkins is a public figure, if Weis's statements were true, Jenkins has no claim for defamation. Accordingly, a ruling that Jenkins was not a public figure would not have changed the outcome of the trial and any error by the trial court in its public figure ruling would be harmless.

■ In the middle of Jenkins's public figure argument in his brief, he alleges that all testimony was opinion testimony and was "not supported by any scientific conclusion or expert testimony." The dissent takes this statement and completely recasts Jenkins's public figure argument into a challenge to the sufficiency of evidence supporting the jury verdict that Weis's defamatory statements were true. The dissent states that "Jenkins asserts that there is *no* evidence" to support the verdict of truth. (Emphasis added.)

That statement is contrary to the assertions that Jenkins makes in his brief albeit in his "public figure" argument. Jenkins asserts in his brief that "it must be pointed out that all testimony [to support the truth of the statements] was opinion and not supported by any scientific conclusion or expert testimony." Further, Jenkins states that "[i]t is beyond the stretch of imagination in reviewing [Weis's] statements to conclude that [the statements] were proven truthful based on

the opinions of the witnesses who were called to testify." Jenkins does not say there is *no* evidence; he says evidence exists but he does not believe it because it is not scientific or expert.[2] Neither Jenkins nor the dissent cites any legal authority to support the conclusion that the jury could not consider testimony of lay persons regarding the truth of the statements.[3]

■ Although Jenkins failed to supply us with a transcript of any of the trial proceedings or testimony (an indication that he was not making a direct challenge to the sufficiency of the evidence, because we need a transcript to review the evidence on such a challenge), he did insert in his brief a summary of the trial testimony supporting the truth of Weis's statements. This evidentiary summary was prepared by Weis's counsel in connection with the post-trial motions and is found in the record on appeal. Moreover, in Jenkins's brief he "accepts the summary of the witnesses' testimony which was submitted." Accordingly, we set forth his evidentiary summary in full:

*"I hope he's not prone to violence because I really am afraid, of a, you know, not attack on me but my family."*

1. Weis testified that she observed Jenkins express anger and rage in her presence.

2. Weis testified that Jenkins verbally abused her secretary at the Department of Financial Institutions.

3. Weis testified that Jenkins publicly accused her of being a criminal at the October, 1986 meeting of the depositors of the failed thrifts.

4. Jenkins and others stated that Jenkins sought the excommunication of Assistant Attorney General Bryce Pettey and attorney Don Allen from the L.D.S. Church.

5. Jenkins sought a criminal investigation of Elaine Weis.

6. Robert Eves testified that Jenkins slandered the title to property his company sought to develop.

7. Weis and George Sutton testified about incidents in which security guards were called to Department of Financial Institutions offices to deal with Jenkins.

8. Weis, Allen and Pettey all testified they feared Jenkins would harm their families.

9. Jenkins called Weis a criminal on the April 1986 KTKK radio broadcast.

10. An employee of the Utah Lt. Governor's office required Jenkins to bring a security guard with him when he visited the office.

*"I think he's a mentally deranged person."*

Weis testified that by saying this she meant Jenkins had disorganized thinking. The following is evidence that demonstrates the truth of that statement.

1. Weis testified that Jenkins' writings were incomprehensible.

2. Weis testified that Jenkins' plan to reorganize the failed thrifts violated every banking canon.

3. George Sutton testified that Jenkins is irrational and crazy.

---

**2.** In fact, Jenkins's expert witness, Dr. Mohr, testified that "people with disordered thinking patterns have a tendency to see conspiracies against them." Thus, the jury could infer from the testimony of Jenkins's expert that because there was testimony that Jenkins saw conspiracies against him, his thinking patterns were disordered.

**3.** The dissent cites one bench trial case, *Alpar v. Weyerhaeuser Co.*, 20 N.C.App. 340, 201 S.E.2d 503, *cert. denied*, 285 N.C. 85, 203 S.E.2d 57 (1974), for the proposition that calling an individual "clinically paranoid" is a diagnosis that

requires expert testimony to verify the condition. However, contrary to the dissent's representations, *Alpar* does not suggest that expert testimony is required to establish or rebut truth. Further, the case does not state that the judge could not consider lay testimony in his determination of truth. Moreover, unlike the statements made in *Alpar*, Weis never alleged Jenkins was "clinically" paranoid or schizophrenic.

Further, we disagree with the dissent's assertion that calling an individual a "paranoid schizophrenic" is necessarily a clinical diagnosis.

4. Robert Eves testified that Jenkins is an "angry kook" and is the kind of person who tells himself the same story so many times that he starts to believe it.

5. Don Allen testified that Jenkins cannot process information without twisting facts and attacking people.

6. Jenkins was given opportunity to receive title to the house he lost in foreclosure but refused the offer on principle.

7. Jenkins buried his invented satellite dish in a garbage dump to preserve the secrecy of the invention.

8. At a time Jenkins was in default on his house mortgage he settled a property dispute and recovered $80,000. He invested the $80,000 in a business, Iron Star Manufacturing, instead of curing the default. He eventually abandoned the business a few months later.

*"In my opinion he's a paranoid schizophrenic. "*

Weis testified that by saying this she meant Jenkins was a person who sees plots because of his irrational thinking. The following is substantial evidence of the truth of this statement.

1. Plaintiff spoke of international criminal conspiracies on the KTKK radio broadcast. The conspiracies involved Weis, Judges of the Third District Court, federal judges, the FBI and organized crime.

2. Plaintiff told Robert Eves that Weis and Judge D. Frank Wilkins were conspiring against Eves to cheat him out of a $4 million real estate investment.

3. Dr. [Mohr], plaintiff's expert, testify (sic) that people with disordered thinking patterns have a tendency to see conspiracies against them.

Contrary to the dissent's claim of *no* evidence, the foregoing reveals an evidentiary

basis for the jury's truth verdict.[4] "We accord due deference to the jury as the fact finder and do not substitute ourselves in this role." *Evans ex. rel. Evans v. Doty,* 824 P.2d 460, 468–69 (Utah App.1991), *cert. denied,* 836 P.2d 1383 (Utah 1992) (quoting *Israel Pagan Estate v. Cannon,* 746 P.2d 785, 793 (Utah App.1987), *cert. dismissed,* 771 P.2d 1032 (Utah 1989)). We will not overturn a jury verdict unless "the evidence to support the verdict was *completely lacking* or was so *slight* and *unconvincing* as to make the verdict plainly unreasonable and unjust." *See Nelson v. Trujillo,* 657 P.2d 730, 732 (Utah 1982) (quoting *McCloud v. Baum,* 569 P.2d 1125, 1127 (Utah 1977)).

Directed Verdict: Emotional Distress and Invasion of Privacy

■ Jenkins claims the trial court improperly dismissed his causes of action for emotional distress and invasion of privacy before he was afforded a full and complete opportunity for a hearing. However, the full text of the minute entry regarding the dismissal reveals that it occurred following Weis's motion for a directed verdict, argument by counsel, and consideration by the trial court. The directed verdict motion was made at the end of the second day of trial. At that point in the trial, Jenkins had rested his case and Don Allen, Eleanor Kent, Val Edwards, and George Sutton had testified on behalf of Weis. The minute entry states:

> The jury having left the courtroom, comes now respective counsel and argue the defendant's motion for a directed verdict. Based upon the arguments of respective counsel, court orders that the motion for a directed verdict is granted in part on the issues of damages resulting from the heart attack and damages resulting from the loss of the home. Court further orders, on its own motion, that the 2nd and 3rd causes of action are dismissed.

---

**4.** The dissent also suggests that the above evidence goes only to the validity of Weis's opinion, not to the truth of her assertions. This assumption can be made if expert testimony were the only way to prove the truth of the statements. However, neither the dissent nor Jenkins has pointed to any cases which require only the use of expert testimony to prove truth. Further, as stated above, along with the lay testimony presented, Jenkins's own expert's testimony could be used by the jury to conclude that Jenkins's thinking patterns were disordered.

Jenkins has not challenged the substance of the trial court ruling. His brief on this point consists of barely more than one page and relies on a single procedural argument, i.e., the trial court did not comply with "Rule 4–501 Motions" of the Utah Code of Judicial Administration.[5] However, this rule has to do with pre-trial and post-trial motions when there is time for research, deliberation, preparation of legal memorandum, and time for advance notice of hearing, rather than "in trial" motions made in the heat of the courtroom struggle.

A motion for directed verdict is typically made orally during trial, immediately after the court and counsel have heard plaintiff's evidence and deemed it insufficient to support plaintiff's case or some necessary element of the claim. Jenkins argues that a directed verdict must not be considered when notice and a hearing are lacking. But, Jenkins had the usual notice for the motion and hearing. He does not contend that he objected to the motion, objected to the ruling, asked that the motion proceedings be placed on the record, or requested additional time to respond. Jenkins, by his failure to take any affirmative actions at trial, has not preserved the issue for appeal. *See In re Estate of Justheim*, 824 P.2d 432, 434–35 (Utah App. 1991); *LeBaron & Assocs., Inc. v. Rebel Enters., Inc.*, 823 P.2d 479, 482–83 (Utah App. 1991).

Moreover, he has not supplied us with a trial transcript or a transcript of the motion proceedings which took place at the end of the second day. Thus, he has prevented us from reviewing either the procedural or substantive aspects of the action taken by either court or counsel.[6] Even if he had preserved this issue for appeal, we cannot review the absent trial court record to determine whether his claims are meritorious.

## Jury Instructions

■ Jenkins alleges that the trial court's jury instructions "at best, must have been confusing to the jury." Weis asserts that because Jenkins failed to properly object to the jury instructions below, he is precluded from raising an objection to the instructions on appeal. We agree. Failure to properly object to a jury instruction below bars an appellant from raising the issue on appeal. *Hansen v. Stewart*, 761 P.2d 14, 16 (Utah 1988); *In re Estate of Justheim*, 824 P.2d 432, 438 (Utah App.1991). Jenkins has failed to show anywhere in the record where he made any objection to the jury instructions. Accordingly, we will not consider this issue on appeal.

## Involvement of Attorney General's Staff

■ Jenkins asserts that because he sued Weis in her individual capacity, the trial court improperly allowed counsel from the state attorney general's office to represent Weis. Jenkins also alleges the trial court improperly allowed members of the attorney general's staff to testify at trial.

Jenkins did not adequately raise this issue before the trial court. Jenkins refers to a letter sent by his counsel to the attorney general's office challenging its representation of Weis. Jenkins submitted this letter and the response from the attorney general's of-

---

5. Rule 4–501 of the Code of Judicial Administration provides the appropriate method for submitting motions to the court. Rule 4–501(1)(a) states that "[a]ll motions ... shall be accompanied by a memorandum of points and authorities ... appropriate affidavits, and copies of or citations by page number to relevant portions of depositions. Memoranda ... shall not exceed ten pages." Subsection (b) goes on to state that "[t]he responding party shall then file and serve upon all parties within ten days ... a memorandum in opposition to the motion, and all supporting documentation." Subsection (c) then provides that "[t]he moving party may serve and file a reply memorandum within five days after service of the responding party's memorandum." Subsection (d) states that either party may submit the matter to the court for decision upon the expiration of the five-day period to file the reply memorandum.

6. The dissent argues that only the damage issue relating to Jenkins's heart attack and loss of his home were discussed at the motion proceedings at the end of the second day of trial. However, this seems impossible to determine without a transcript of the motion proceedings.

fice as part of his response to a motion for summary judgment. However, Jenkins never submitted any request or motion to the court to disqualify the attorney general's office from representing Weis or to prevent members of the attorney general's staff from testifying. Further, the record does not reveal any objection by Jenkins when attorney general staff members appeared as witnesses in court. We will not decide an issue unless the trial court has first had the opportunity to address the issue. *Smith v. Iversen,* 848 P.2d 677, 677 (Utah 1993); *Jolivet v. Cook,* 784 P.2d 1148, 1151 (Utah 1989). Accordingly, because Jenkins failed to properly present these issues to the trial court for resolution, we will not consider them on appeal.

### Pretrial Motions

 Jenkins asserts that the trial court abused its discretion in ruling on untimely pretrial motions. Specifically, Jenkins challenges the trial judge's ruling, four days before trial, that Jenkins was a public figure. Again, Jenkins failed to preserve this issue for appeal. He has not identified any part of the record showing that he made any objection to the ruling, which he now claims was untimely. Further, Jenkins could have filed a motion for continuance of the trial if, as he now asserts, it was "humanly impossible for his attorney to prepare" for trial in the days remaining because of the public figure ruling.

### CONCLUSION

Because the jury found Weis's statements to be true, the trial court's ruling that Jenkins was a public figure, if improper, was harmless. The trial court also properly dismissed Jenkins's other causes of action. Further, we do not address the following issues because Jenkins did not properly preserve them for appeal: whether the trial court submitted an erroneous jury instruction, whether the trial court improperly allowed counsel from the state attorney general's office to represent Weis and improperly allowed members of the attorney general's staff to testify at trial, and whether the trial

court improperly decided a pretrial motion within five days of trial.

GARFF, J., concurs.

BENCH, Judge (dissenting):

I respectfully dissent. I would reverse the trial court's denial of Jenkins's motion for a new trial on the defamation claim because the evidence does not establish the truthfulness of the defamatory statements. I would also reverse the trial court's dismissal of the claims of intentional infliction of emotional distress and invasion of privacy because Jenkins had no notice and opportunity to be heard on the court's sua sponte action. In view of these crucial errors, I would reverse and remand the case for further proceedings.

### Truth of Defamatory Statements

Jenkins challenged the jury's verdict in his motion for a new trial, claiming that there was insufficient evidence to support the jury's conclusion that the defamatory statements made by Weis were in fact true. The trial court denied his motion.

> Where the trial court has *denied* the motion for new trial, its decision will be sustained on appeal if there was "an evidentiary basis for the jury's decision . . . ." The trial court's denial of a motion for a new trial will be reversed only if "the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust."

*Nelson v. Trujillo,* 657 P.2d 730, 732 (Utah 1982) (quoting *McCloud v. Baum,* 569 P.2d 1125, 1127 (Utah 1977)); *see also Von Hake v. Thomas,* 705 P.2d 766, 769 (Utah 1985) ("we will not substitute our judgment for that of the jury where a verdict is supported by substantial and competent evidence").

Typically, an appellant challenging the sufficiency of the evidence must first marshal the evidence in support of the jury verdict and then show how the evidence is insufficient. *Crookston v. Fire Ins. Exch.,* 817 P.2d

789, 799 (Utah 1991). In this case, however, Jenkins asserts that there is no evidence that establishes the truthfulness of the defamatory statements.[1] Since there is purportedly nothing to marshal, the marshaling requirement is satisfied without rehearsing the evidence. Inasmuch as Weis does not assert that there is evidence to establish that Jenkins was in fact a "paranoid schizophrenic," "mentally deranged," or "a vicious, vicious person," we should accept Jenkins's assertion that there is no such evidence.

Weis acknowledges that she did not present at trial any expert testimony or any other evidence that Jenkins was in fact a paranoid schizophrenic, mentally deranged, or a vicious person. She argues, however, that Jenkins misconstrues her defense, which is that she did not use those terms in a clinical sense. She contends that she used the terms only as "street expressions," much like saying a person is "nuts" or "crazy." In other words, she claims she did not really mean that Jenkins actually met the "psychiatric diagnostic criteria of a 'paranoid schizophrenic.'" Although claiming truth as a defense, Weis asserts that she had no burden to prove that Jenkins was in fact a paranoid schizophrenic, mentally deranged, or a vicious per-

son. Weis's argument fails as a matter of law.

While Weis's subjective intent may have some relevancy to whether she acted with malice, it has no relevancy to the question of whether her statements were in fact true.[2] It is not the truth of her privately-intended, subjective message that is at issue—it is the message that damages the plaintiff's public reputation that must be true.

> "Libel" means a malicious defamation, expressed either by printing or by signs or pictures or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue or reputation, or publish the natural defects of one who is alive, and thereby to expose him to public hatred, contempt or ridicule.

Utah Code Ann. § 45–2–2(1) (1993).

To say that a person is mentally deranged, and then to provide a specific clinical diagnosis such as paranoid schizophrenia, and to accuse the person of being so vicious that the speaker fears for her family's safety, cannot be dismissed as mere "street expressions" simply because Weis subjectively intended that they be so interpreted.[3] Such statements do not convey any objective message

---

**1.** Contrary to the majority's suggestion as to how this case was argued in his brief on appeal, Jenkins directly challenged the sufficiency of the evidence. In challenging the court's decision to submit Weis's affirmative defense to the jury, Jenkins urged that "there was *no* expert testimony provided by the appellee" to establish that the defamatory statements were true.

**2.** The fact that Weis couched her statements in opinion language does not allow her to escape liability for her comments by merely showing that she in fact believed what she said she believed. Opinions regarding facts are not unconditionally privileged. *See Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 17–20, 110 S.Ct. 2695, 2705–06, 111 L.Ed.2d 1 (1990). The Supreme Court expressly acknowledged in *Milkovich* that the statement, "[i]n my opinion John Jones is a liar" implies "a knowledge of facts which lead to the conclusion that Jones told an untruth." *Id.* This statement is therefore just as damaging as a direct assertion that "Jones is a liar." The Supreme Court explained that if the substance of a statement couched in opinion language is capable of being proven true or false, it is subject to suit. *Id.; see also West v. Thomson Newspapers,*

835 P.2d 179, 183–87 (Utah App.) (interpreting *Milkovich*), cert. granted, 843 P.2d 1042 (Utah 1992).

Weis's statements imply knowledge of conduct that leads to a conclusion that Jenkins is in fact a paranoid schizophrenic, mentally deranged, and a vicious person. These assertions are capable of being proven true or false and are therefore subject to suit for defamation. The evidence summarized by the majority goes not to the truth of Weis's statements, but only to the validity of her opinion. In order to assert truth as a defense, Weis must prove that Jenkins was in fact a paranoid schizophrenic, mentally deranged, and a vicious person, not merely that she believed him to be so. Her subjective beliefs go only to the question of malice. *See Milkovich,* 497 U.S. at 20 n. 7, 110 S.Ct. at 2706 n. 7.

**3.** Calling an individual "clinically paranoid" is a diagnosis that requires expert testimony to verify the condition. *See, e.g., Alpar v. Weyerhaeuser Co.,* 20 N.C.App. 340, 201 S.E.2d 503, 507 (defendant's pleading alleging both nonutterance and defense of truth for libelous interoffice letter, which accused plaintiff of being "clinically paranoid," prompted plaintiff to have expert witness

other than the plain meaning of the words used. They are not "rhetorical hyperbole." *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50, 108 S.Ct. 876, 879, 99 L.Ed.2d 41 (1988) (rhetorical hyperbole is protected because it cannot "reasonably [be] interpreted as stating actual facts" about an individual); *accord Greenbelt Coop. Publishing Ass'n v. Bresler*, 398 U.S. 6, 13–14, 90 S.Ct. 1537, 1541–42, 26 L.Ed.2d 6 (1970). A reasonable person, taking Weis's statements, as a whole, would objectively assume that she was saying that Jenkins was in fact a paranoid schizophrenic, mentally deranged, and a vicious person. The jury itself held that the statements were defamatory, a conclusion it would not likely draw from simple "street expressions."

Because of Weis's strategic failure to present any expert evidence to prove that Jenkins was in fact a paranoid schizophrenic, mentally deranged, or a vicious person, the special jury verdict completely lacks supporting evidence.[4] The trial court erred as a matter of law in not vacating the special verdict and granting a new trial. Because I would remand for a new trial, I would also hold that the trial court erred in ruling that Jenkins was a public figure in view of Weis's failure to establish the bases for the privilege. Specifically, Weis did not sufficiently identify a public controversy or show that Jenkins had voluntarily and successfully placed himself at the forefront of the controversy in an attempt to order society. *See generally Wolston v. Reader's Digest Ass'n,*

*Inc.*, 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979); *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287 (D.C.Cir.), *cert. denied,* 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128 (1980).

### Sua Sponte Dismissal

Jenkins asserts that the trial court abused its discretion by dismissing, on its own motion, his causes of action for intentional infliction of emotional distress and invasion of privacy. The trial court did not explain under what authority or for what reason it dismissed Jenkins's causes of action. We do know, however, that the court dismissed the causes of action "on its own motion."

"Generally, a trial court may not dismiss an action when neither party has sought dismissal and there is no notice or hearing on whether there exists a justifiable cause for dismissal." *Rubins v. Plummer*, 813 P.2d 778, 778 (Colo.App.1990). Unless expressly granted authority to act on its own motion, a trial court must typically limit its rulings to the motions placed before it. "[A] trial court has no authority to render a decision on issues not presented for determination. Any findings rendered outside the issues [presented] are a nullity." *Combe v. Warren's Family Drive–Inns, Inc.*, 680 P.2d 733, 736 (Utah 1984); *see also* Utah R.Civ.P. 7(b)(1) ("application to the court for an order shall be by motion"). Because Weis did not make a motion for a directed verdict, the trial court plainly erred when it dismissed Jenkins's

to rebut defendant's clinical diagnosis), *cert. denied,* 285 N.C. 85, 203 S.E.2d 57 (1974). Similarly, as in the instant case, calling an individual a "paranoid schizophrenic" is a clinical diagnosis that requires expert testimony to verify the condition. *Cf. Webster's Medical Desk Dictionary* 640 (1986) (defining "schizophrenia" as a "psychotic disorder," or psychosis); *id.* at 588 (defining psychosis as a "serious mental illness (as schizophrenia)"). To say that a person has a "serious mental illness" is not merely street language, but clearly requires an expert witness to verify the truthfulness of the diagnosis. *Cf. Brehany v. Nordstrom, Inc.,* 812 P.2d 49, 57 (Utah 1991) (defense of truth can only be established if defamatory charge is *"true in substance"*). Therefore, since terms such as "paranoid schizophrenic" are specific clinical diagnoses, the only

way they can be "true in substance" is if an expert witness verifies such diagnoses.

4. The majority points to Jenkins's own expert, Dr. Mohr, to establish that Jenkins had a disordered thinking pattern. Unlike the majority, I do not believe that Dr. Mohr's testimony that "people with disordered thinking patterns have a tendency to see conspiracies against them" in any way infers that Jenkins had a disordered thinking pattern. The other evidence summarized by the majority does not prove that Jenkins was in fact a paranoid schizophrenic, mentally deranged, or a vicious person. While I do not concede that the evidence is even admissible, I believe it can only go to the validity of Weis's opinion. *See* note 2.

causes of action without first giving Jenkins notice and an opportunity to argue against dismissal. *Cf. Preuss v. Wilkerson*, 858 P.2d 1362, 1362–63 (Utah 1993) (trial court must give notice and opportunity to be heard before dismissing claim for failure to prosecute).

Weis nevertheless asserts that any "procedural error" committed by the trial court was harmless because insofar as the merits of the trial court's ruling are concerned, directed verdicts were appropriate. Regardless of whether a directed verdict might have been granted had the motion been properly made, noticed, and heard, the trial court's ruling was void at its inception. A judgment is void "if the court that rendered it ... acted in a manner inconsistent with due process." *Richins v. Delbert Chipman & Sons Co.*, 817 P.2d 382, 385 (Utah App.1991) (quoting *Automatic Feeder Co. v. Tobey*, 221 Kan. 17, 558 P.2d 101, 104 (1976)); *accord In Re Estate of Jones*, 858 P.2d 983, 985 (Utah 1993); *Brimhall v. Mecham*, 27 Utah 2d 222, 224, 494 P.2d 525, 526 (1972); *Workman v. Nagle Constr., Inc.*, 802 P.2d 749, 753 (Utah App. 1990).

> In our judicial system, except in extraordinary circumstances that are not present here, all parties are entitled to notice that a particular issue is being considered by a court and to an opportunity to present evidence and argument on that issue before decision. The failure to give adequate notice and opportunity to participate can constitute a denial of due process under article I, section 7 of the Utah Constitution.

*Plumb v. State*, 809 P.2d 734, 743 (Utah 1990) (citations omitted).

Sua sponte decisions by trial courts are inconsistent with the notion of due process

when parties are not provided advance notice that the court is considering a given course of action, and the losing party is not allowed to be heard thereon.[5] "The right to prior notice and an opportunity to be heard is a critical part of our judicial system.... A method of resolving cases that bypasses this requirement can not be accepted as a fair, neutral, and rational process." *Rubins*, 813 P.2d at 780 (citing *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)); *see also Nelson v. Jacobsen*, 669 P.2d 1207, 1211 (Utah 1983) ("Timely and adequate notice and an opportunity to be heard in a meaningful way are at the very heart of procedural fairness.").

> A trial court should normally refrain from dismissing a complaint for failure to state a claim unless such a deficiency is brought to its attention by way of pleadings or motions by the parties. If the court is inclined to dismiss *sua sponte*, it must afford the plaintiff an opportunity to be heard.... While we agree that circumstances might arise when a trial court is justified in raising the dismissal *sua sponte*, it should, as a matter of fundamental fairness, if not procedural due process, give plaintiff an opportunity to persuade the court that dismissal is not proper.

*Rubins*, 813 P.2d at 779 (citations omitted).

The lack of notice and opportunity to be heard are further aggravated by the fact that a trial court acting sua sponte has abandoned its impartial position and has become an advocate for one party over the other. *See Ricketts v. Midwest Nat. Bank*, 874 F.2d 1177, 1184 (7th Cir.1989). "Preservation of the integrity of the adversarial system of conducting trials precludes the court from infringing upon counsel's role of advocacy.... [T]he interests of justice are not

---

5. From all that appears in the record, Jenkins had no notice and hearing on the court's sua sponte dismissal of his causes of action for intentional infliction of emotional distress and invasion of privacy. Jenkins claims that the dismissal was "without findings and on the Judge's own motion in his chambers without a court reporter present." In any event, the minute entry itself indicates:

> Based upon the arguments of respective counsel, court orders that the motion for a directed verdict is granted in part on the issues of damages resulting from the heart attack and damages resulting from the loss of the home. *Court further orders, on its own motion, that the 2nd and 3rd causes of action are dismissed.* (Emphasis added.)

enhanced when the court exceeds its role as arbiter by reaching out and deciding an issue that would otherwise be dead...." *Girard v. Appleby,* 660 P.2d 245, 247 (Utah 1983).

Since the sua sponte dismissal of Jenkins's causes of action was void, it cannot be affirmed, regardless of whether a directed verdict would have been permissible had the motion been properly made. *Cf. Birch Creek Irrigation v. Prothero,* 858 P.2d 990, 993 (Utah 1993) (trial court erred in granting permanent injunction on motion for preliminary injunction, regardless of whether permanent injunction would have been appropriate upon proper motion). A void judgment cannot subsequently become a valid judgment. "Either a judgment is void or it is valid. Determining which it is may well present a difficult question, but when that question is resolved, the court must act accordingly." *Garcia v. Garcia,* 712 P.2d 288, 291 (Utah 1986) (quoting 11 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2862 (1973)). I would therefore vacate the trial court's sua sponte dismissal of Jenkins's second and third causes of action.

fenses, trial courts must consider carefully all attendant circumstances in individual cases before concluding that exigent circumstances exist, always mindful of heavy burden government must bear in overcoming presumption of unreasonableness associated with warrantless home searches. U.S.C.A. Const. Amend. 4.